CHARLTON E. MISSKELLEY v. HOME LIFE INSURANCE COMPANY.

(Filed 13 December, 1933.)

1. **Insurance R c—Conflicting evidence as to whether insured had disease causing disability prior to issuance of policy held for jury.**

Plaintiff brought suit on a disability clause in a policy of life insurance which provided for certain monthly payments if insured should become disabled by bodily injury occurring or disease originating after the issuance of the policy. Plaintiff testified that at the time of the issuance of the policy his eyesight was not impaired and that he was thoroughly examined by insurer's physician upon his application for the policy, and that no impairment or disease of his sight was disclosed by the physician's examination and test of his eyes, and that subsequent blindness had rendered him disabled. Defendant introduced testimony of an eye specialist that from his examination of plaintiff's eyes plaintiff was suffering from

MISSKELLEY *v.* INSURANCE CO.

a chronic eye disease several years prior to the application for the policy, and moved for a nonsuit on the ground that the evidence showed that the disease resulting in plaintiff's disability originated prior to the issuance of the policy: *Held*, the evidence, viewed in the light most favorable to plaintiff, was sufficient to be submitted to the jury.

2. **Appeal and Error A a—**

The Supreme Court is confined to matters of law or legal inference upon appeal of a civil action. Art. IV, sec. 8.

3. **Insurance M e—Denial of liability is a waiver of proof of disability.**

Where an insurer denies liability under a disability clause in a life insurance policy on the ground that the alleged disability resulted from a disease originating prior to the issuance of the policy and therefore did not come within the terms of the disability clause, and that the disability was not total as defined by the policy, the insurer waives proof of disability.

4. **Insurance R c—**

The attending physician's statement as to insured's condition is not conclusive on the question of whether insured had become totally and permanently disabled within the provisions of the policy contract.

5. **Same—Instruction defining total permanent disability held without error.**

In an action on a disability clause in a policy of life insurance providing for the payment of a certain sum monthly to insured if he should become totally and presumably permanently disabled and thereby prevented from engaging in any occupation and performing any work for compensation and profit, an instruction that the question to be determined by the jury was whether insured "was prevented from working with reasonable continuity in his usual work or in such work as he is qualified physically and mentally under all the circumstances to do, substantially the reasonable and essential duties incident thereto" and that ability to do odd jobs of a comparatively trifling nature would not prevent recovery, is held to be without error.

6. **Insurance M c—Proof of loss sufficient for recovery if established in court is sufficient.**

It is not required that an insured should furnish proof of disability to the satisfaction of the insurer, but only that he should furnish such proof of disability as would entitle him to recover if established in court according to the rules of evidence.

APPEAL by defendant from *Cranmer, J.,* and a jury, at March Term, 1933, of WAKE. No error.

This was a civil action, instituted by Charlton E. Misskelley, plaintiff, against Home Life Insurance Company, defendant, to establish the liability of defendant for certain benefits in the nature of stipulated monthly income and waiver of premiums, under the provisions of total and permanent disability contained in a policy of life insurance issued by defendant upon the life of plaintiff.

On 31 July, 1929, plaintiff made written application to defendant company for a policy upon his life in the face amount of $2,000, the policy, among other features, contained disability benefits consisting of waiver of premiums and monthly income. Upon consideration of the application, defendant instructed plaintiff to be examined by its medical examiner, Dr. James R. Rogers, of Raleigh; and on 4 August, 1929, plaintiff presented himself to and was examined by Dr. Rogers.

On 19 August, 1929, in consideration of said application and medical examination and the payment by plaintiff of the initial semiannual premium of $37.94, defendant issued to plaintiff Policy No. 368913, for the face amount of $2,000. In said policy defendant agreed, upon due proof being submitted, "that the insured has become and is totally and presumably permanently disabled by bodily injury occurring or disease originating after the date on which this agreement became effective, and if no premium or installment thereof be in default": (1) To waive the payment of premiums under said policy, and to refund any premiums paid which would be subject to waiver; and (2) to pay to insured a monthly income of $10 for each $1,000 of the face amount of the policy during the period of disability. The semiannual premium of $37.94 was, under the policy, allocated to the benefits thereunder, as follows: For the ordinary death benefits a semiannual premium was charged of $31.28; for the accidental death benefits a semiannual premium was charged of $1.46; for the total and permanent disability benefits a semiannual premium was charged of $5.20, making a total semiannual premium of $37.94. The policy contained the following definitions of total and permanent disability: (a) "The irrecoverable loss of sight of both eyes or the total and permanent loss by accident or disease of the use of both hands, or of both feet, or of one hand and one foot, shall constitute total and permanent disability within the meaning of this agreement without prejudice to any other cause of disability, and in any such case the benefits will accrue from the date of such disability, anything to the contrary hereinbefore notwithstanding: Provided, however, that benefits shall not accrue more than six months prior to the date of receipt of such due proof." (b) "Disability will be deemed to be total whenever the insured becomes wholly disabled by bodily injury or disease, so that he is prevented thereby from engaging in any occupation and performing any work for compensation or profit, and under this agreement disability will be presumed to be permanent after such total disability has existed continuously for not less than three months."

Among other agreements and stipulations, said policy of insurance provided as follows: "If at any time before the policy anniversary nearest to the sixtieth birthday of the insured, and before the sum insured or any installments thereof becomes payable, due proof be sub-

mitted to the company at its home office in the city of New York that the insured has become and is totally and presumably permanently disabled by bodily injury occurring or disease originating after the date on which this agreement becomes effective, and if no premiums or installment thereof be in default, Home Life Insurance Company of New York hereby agrees: '1. To waive the payment of premiums under the said policy and under this agreement which becomes due after total disability has existed continuously for three months, but only during its continuance thereafter: Provided, however, that in no event shall a premium due more than six months prior to the date of receipt of such due proof be subject to waiver. In the event that any premium or premiums be paid which would be subject to waiver under this provision, the company will refund the same. 2. To pay to the insured a monthly income of $10 for each $1,000 of the face amount of the policy, commencing when total disability has existed continuously for three months and continuing thereafter during such disability, but not beyond the date when the sum insured, or any installment thereof, becomes payable: Provided, however, that in no event shall income payments accrue more than six months prior to the date of receipt of such due proof.' "

The company admitted the due execution and issue of the policy, and that plaintiff was under the age of sixty years.

The issues submitted to the jury and their answers thereto were as follows:

"1. Has the plaintiff, since 1 September, 1930, been totally and presumably permanently disabled from bodily injury occurring or disease originating after the issuance of the policy, as alleged in the complaint? Answer: 'Yes.'

"2. Was due proof submitted to the company at its home office in the city of New York that this insured had become and was totally and permanently presumably disabled by bodily injury occurring or disease originating after date on which the policy agreement became effective? Answer: 'Yes.'

"3. If so, on what date was such proof submitted? Answer: '4 January, 1932.' "

The court below rendered judgment on the verdict. Defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*J. L. Emanuel for plaintiff.*
*Winston & Tucker and Murray Allen for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence defendant made motions for judgment as in case of

nonsuit.  C. S., 567.  The court below overruled these motions, and in this we can see no error.

Plaintiff testified, in part: "I made application to the Home Life Insurance Company of New York for a policy of insurance on 31 July, 1929.  After making application for the policy, on 4 August, 1929, the company sent me to Dr. James R. Rogers to be examined.  I visited Dr. Rogers' office for this examination.  He stripped me to my waist and tested my heart and lungs and my blood pressure.  He took a specimen of my blood and urine; examined my eyes, head, nose, ears, and throat.  In examining my eyes, he had some kind of a little light. *He looked into my eyes with it.  He made me close one eye and look at a calendar on the wall about fifteen feet back, I reckon.  He covered my eye with a card and told me to read certain things on the calendar, which I did.*  He would cover the other eye and told me to read that on another calendar, and I read that.  I did not do anything to prevent Dr. Rogers from examining me, or any part of my body, in connection with the policy of insurance.  After the examination a policy was issued to me.  These attachments were all connected with it.  *At the time this policy was issued to me I was not suffering from any condition of my eyes or other part of my body.*  At the time this policy of insurance was issued to me I was engaged in work as a carpenter foreman on the Raleigh High School on St. Mary's Street.  At that time I did not experience any trouble in doing my work.  I was able at that time to drive my own automobile.  I was able at that time to walk across the streets and street intersections alone.  From the time this policy was issued to me and up to the first of September, 1930, *I did not have any trouble with my eyesight.*  I did not ever make any complaint about my eyesight."  Q. "I will ask you to look at these gentlemen of the jury, and as I walk down before them tell me if you can see them.  Can you see Mr. Kennedy, juror No. 1?"  A. "I can't see none of them.  All I can see is a blackness.  I can't tell who nobody is.  I can see only a black form.  I am not able to tell whether Mr. Kennedy is wearing glasses or not.  *Since the first of September, 1930, I have not been able to engage in any occupation for gain or profit.*  I attempted to do work after the first of September, 1930.  I tried to cover a little shed and fell off.  *I have not been able to work at all since then.*  At this time I am not able to drive my own automobile.  I am not able to walk across street intersections alone, not safely.  I get someone to come with me when I come to town.  The last work I engaged in was in September, 1930, at the Catholic Orphanage for Southeastern Construction Company of Charlotte.  At that time I was carpenter foreman."  Q. "Now, what were you doing at the Catholic Orphanage at the time this accident occurred?"  A. "Well, they had a wide span there in the

floor on the third floor and it was swaggering. We went into the base-
ment and was putting in steel cross-beams under the floor to hold the
floor up, which was going to fall. We put steel beams in to hold it up.
We worked there and were putting in the last beam when it slipped in
some way. I was standing to the side and it hit me side of the head
and knocked me unconscious about an hour or more. I have a scar on
my head now from it. It is still here (indicating). *I have suffered
with my eyes since then. My right eye is plumb out and my left is
practically out. I can only tell a light, is all. My eyesight is getting
worse."*

The defendant contended, in part: "That since 1923, six years before
the policy was issued, that Mr. Misskelley, the plaintiff, was suffering
with choroiditis, a disease of the eye, and that when he was examined
by Dr. Hicks in 1931 that the tissues and membranes of the eyes, or the
membranes composing the eye, were found to be scarred, or some of
them were, showing that the disease had continued for some length of
time. That he is not permanently and totally disabled."

On these disputed facts, which were corroborated by evidence on both
sides of the controversy, the court below, at the request of defendant,
gave the following instructions: "Now, the defendant has requested the
court to give you certain instructions, which I will now proceed to do.
I instruct you that if you find from the evidence, and by its greater
weight, that the plaintiff has become and is totally and permanently
presumably disabled from bodily injury or disease, such disease affect-
ing his eyesight and thereby rendering him totally and permanently
disabled, and if you further find that he was suffering from a disease
which affected his eyesight, known as choroiditis, in the year 1923, and
that the effect of this disease upon his eyesight continued until after 19
August, 1929, you will answer the first issue 'No.' If you find from the
evidence that the plaintiff had the disease known as choroiditis in the
year 1923, and that his permanent and total disability, if you find that
he is now totally and permanently disabled, is the result of such disease,
you will answer the first issue 'No.'" The court further instructed the
jury: "Now, as I have stated to you, the burden is upon the plaintiff to
satisfy you by the greater weight of the evidence, and I have explained
what that phrase means. If he has so satisfied you, that is to say, by
the greater weight of the evidence, that he has been totally and presuma-
bly permanently disabled from bodily injury occurring or disease origi-
nating after the issuance of the policy, it will be your duty to answer the
first issue 'Yes.' If you do not so find, it will be your duty to answer
the first issue 'No.'"

The first issue was: "Has plaintiff, since 1 September, 1930, been
totally and presumably permanently disabled from bodily injury occur-

ring or disease originating after the issuance of the policy, as alleged in the complaint?" The jury answered this disputed fact "Yes," in favor of the plaintiff.

Under Article IV, sec. 8, of the Constitution of North Carolina, this Court has "jurisdiction to review, upon appeal, any decision of the courts below, upon any matter of law or legal inference," etc. Taking the evidence in the light most favorable to plaintiff, it was ample to have been submitted to the jury.

The second issue was: "Was due proof submitted to the company at its home office in the city of New York that this insured had become and was totally and permanently presumably disabled by bodily injury occurring or disease originating after date on which the policy agreement became effective?" The jury answered this issue "Yes." The third issue was: "If so, on what date was such proof submitted?" The jury answered: "4 January, 1932." On the second issue the defendant requested the court below to charge the jury: "The court instructs you that upon all of the evidence in this case you will answer the second issue 'No.'" The court below refused to give this prayer for instruction, and in this we can see no error.

On 21 September, 1931, the following letter was written from headquarters of the American Red Cross at Raleigh, N. C., signed by Hal. W. Young and Mrs. Hubert Young, executive secretary: "Re: Misskelley, Charlton E. Gentlemen: The above World War veteran is a holder of Policy No. 368913, with disability clause for payment on account of permanent and total disability. Mr. Misskelley was rated as totally and permanently disabled by the Veterans' Bureau on account of blindness in January, 1931, and is receiving the maximum amount of $40 per month for non-service connected disability under World War Veterans' Act, 1924, as amended 3 July, 1930. From Mr. Misskelley's receipt, I note that he made a payment on this insurance on 19 August, 1931. Is he not entitled to a refund of this payment as well as payment on policy dated from January, 1930. Kindly advise me regarding this at your earliest convenience, as Mr. Misskelley has been obliged to give up all work and is entirely dependent on his wife and parents for support. I am attaching hereto letter from the Veterans' Bureau and copy of act. Assuring you of our appreciation and coöperation. Very truly yours."

On 24 September, 1931, defendant's assistant actuary answered and addressed the letter to Mrs. Hubert Young, executive secretary, as follows: "Re: Policy No. 368913—Charlton E. Misskelley. Dear Madam: We are in receipt of your letter of 21 September enclosing a copy of a letter from the Veterans' Bureau and a copy of the World War Veterans' Act, with reference to the above insured's disability. We here-

with enclose forms for proof and claim of the disability under Policy No. 368913. Will you kindly have the insured complete the one statement, and have the other completed by his attending physician? If his disability claim is approved, the premium due 19 August will be refunded and waived, provided that he was totally disabled for three months prior to the end of the grace period."

On 4 January, 1932, Mrs. Hubert Young, executive secretary, sent the following letter to defendant: "Re: Misskelley, Charlton E. Dear Sirs: Attached hereto are claim for disability benefits, also statements from Dr. John B. Wright and Dr. V. M. Hicks, this city." In this letter was "Claim for disability benefits submitted to Home Life Insurance Company," signed by plaintiff, with attending physicians' statements. This statement of plaintiff is about the same as his testimony on the trial. The physician's statement, who examined him 23 April, 1931, says: "(16) Does the disability completely prevent the insured from doing work of any kind or engaging in any business or occupation? No. Since what date? ................day of .............., 19........ (17) From present indications, what seems the most probable future course of the disease? Describe as fully as you can. Eyesight gradually (slowly) being impaired. (18) What are the prospects that the insured will recover to the extent of being able to do work of some kind, or to engage in any occupation or business, even in a limited way? (State why.) Good. Why—because he was not totally blind, or was not the last time I saw him."

On 11 February, 1932, plaintiff received a letter from defendant company's assistant actuary, which reads as follows: "Re: Policy No. 368913. Dear Sir: This is in reference to your claim for an allowance of the disability benefits under the above-numbered policy. We note that the doctor who completed the attending physician's statement for you has not been attending you, but only examined you on 25 April, 1931. From the evidence submitted by him, and that of the company's examiner, it appears that there has been an impairment in your vision, but it does not appear that your vision is impaired to such an extent that you are unable to engage in any occupation. Furthermore, we are in receipt of evidence to the effect that you had a choroiditis in the right eye, which essentially destroyed the vision of that eye some eight or nine years ago. The above-numbered policy was issued in connection with your application, for it is dated 31 July, 1929. In your application for the insurance and declaration to our examiner at the time of your examination in connection with the application, you apparently withheld this information from the company. We wish to call your attention to the disability contract issued in connection with your policy, which provides for benefits only if due proof be submitted to the

company 'that the insured has become and is totally and presumably permanently disabled by bodily injury occurring or disease originating after the date on which this agreement became effective.' *Since you claim disability on account of a disease which apparently originated before the date on which the contract became effective, this alone would preclude us from allowing your claim."* (Italics ours.)

On this second issue, the court below charged the jury as follows: "The burden here is upon the plaintiff, Mr. Misskelley, to satisfy you by the greater weight of the evidence. He contends, gentlemen of the jury, that he wrote to the company, but could hear nothing from them; that he received no reply to his letters, or any of the communications, until Mr. Misskelley requested the good offices of the Raleigh Chapter of the Red Cross to write, and that when Mrs. Young, secretary of the Red Cross, wrote, they then replied to Mrs. Young, and that as soon thereafter as practicable they sent in proofs of claim on the blanks furnished by the company. Now, Mr. Misskelley contends that he wrote his first letter to the company on 15 January, 1931, and that you should so find, and that upon receiving no reply to that letter, he then requested Mrs. Misskelley to write, and that she wrote once or twice, but received no reply; that then, at the request of either Mr. or Mrs. Misskelley, Mrs. Young then wrote to the company and got the blanks upon which proof of claim was made. He contends that the company was advised of notice of his disability on 15 January, 1931, and that you should answer the second issue 'Yes.' Now, the defendant, on the other hand, contends that it received no such letters; that it received no letters from either Mr. Misskelley or Mrs. Misskelley, and that you should so find. (Now, I instruct you, gentlemen, that it is a presumption of law that when a letter is properly addressed and stamped and placed in the mail that it was received. That presumption may be rebutted, however.) Now, Mr. Misskelley contends that on 15 January, 1931, he wrote a letter in his own hand; that it was properly stamped and duly addressed and placed in the postoffice at Raleigh, and that you should so find; that thereafter his wife wrote one or two letters, and addressed them properly and placed the required amount of stamps upon the letters, or letter, and mailed the same in the postoffice in Raleigh, and that you should so find, and contends further that you should answer the issue 'Yes.' The defendant contends that you should answer the issue 'No.' Now, if the plaintiff has satisfied you by the greater weight of the evidence that due proof was submitted, it will be your duty to answer the second issue 'Yes.' If he has not so satisfied you, it will be your duty to answer the issue 'No.' " From the finding of the jury, the exception and assignment of error to the foregoing portion of the charge in parentheses becomes immaterial. The defendant contends that under the policy this was not "due proof." We cannot so hold.

Plaintiff in his complaint alleged: "(7) That plaintiff has submitted due proof to the defendant at its home office in the city of New York; but defendant has written plaintiff denying its liability, and has declined to recognize his claim, and refused to pay the same." The defendant in its answer says: "(7) Answering the allegations in paragraph 7, defendant denies that plaintiff has submitted due proof to it at its home office in the city of New York. It is admitted that defendant has denied liability and declined and refused to recognize and pay plaintiff's claim for the reasons set forth in this answer."

In Cyclopedia of Insurance Law (Couch), Vol. 7, p. 5545, part sec. 1573, is the following: "Based largely upon the principle or theory that the law does not require a vain, useless, or unnecessary thing, that is, something that will be unavailing, the general rule is that a denial by the insurer, or its authorized agent, or liability under its policy, if made during the period of presentation of proofs, will operate as a waiver of a provision which is merely a condition precedent to the bringing of an action, such as one requiring notice and proofs of loss—at least, where the denial is based upon grounds other than the failure to furnish such notice or proofs."

In Cooley's Briefs on Insurance, Vol. 7 (2d ed.), at p. 6019, the principle is stated: "A failure to give notice or furnish proofs of loss, or defects in the notice and proofs, are waived by a denial of liability on other grounds."

In *Gerringer v. Ins. Co.*, 133 N. C., 407 (415), we find: "The weight of authority is in favor of the rule that a distinct denial of liability and refusal to pay, on the ground that there is no contract or that there is no liability, is a waiver of the condition requiring proof of loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished." *Jordan v. Hanover F. Ins. Co.*, 151 N. C., 341; *Higson v. North River Ins. Co.*, 152 N. C., 206; *Shuford v. Life Ins. Co.*, 167 N. C., 547; *Lowe v. Fidelity & Cas. Co.*, 170 N. C., 445; *Moore v. General A. F. & L. Assur. Corp.*, 173 N. C., 532; *Mercantile Co. v. Ins. Co.*, 176 N. C., 545; *Proffitt v. Ins. Co.*, 176 N. C., 680; *Taylor v. Ins. Co.*, 202 N. C., 659; *Smith v. Assurance Society, ante,* 387.

The principles above enunciated apply to life as well as fire insurance. In a policy similar to the one under consideration, we find, in *Federal Life Ins. Co. v. Lewis,* 183 Pac. Rep. (Okla.), 975, the following: "The provision in the insurance policy requiring proof of total disability to be furnished the company within a certain definite time is waived by the company denying liability within such time upon other grounds than failure to furnish proof of total disability." *Insurance Co. v. Tackett,* 149 Okla., 147, 299 Pac. Rep., 862; *Insurance Co. v. Callahan,* 57 S. W. (2d), 1083.

The attending physician's statement as to plaintiff's condition is not conclusive on plaintiff's right to recover. *Fields v. Assur. Co.*, 195 N. C., 262; *Buchholz v. Metropolitan Life Ins. Co.*, 160 S. W., 573, 177 Mo. App., 683.

The court below charged the jury as follows: "Now, gentlemen of the jury, the policy provides: 'Totally disabled by injury or disease, so that he is prevented thereby from engaging in any occupation and performing any work for compensation or profit.' 'Prevented thereby from engaging in any occupation and performing any work for compensation or profit.' You are doubtless asking yourself the question: Just what does that mean? What does 'prevented thereby from engaging in any occupation and performing any work for compensation or profit' mean? (I instruct you, gentlemen of the jury, that the question for you is: Was he prevented from working with reasonable continuity in his usual work, or in such work as he, Mr. Misskelley, is qualified physically and mentally under all the circumstances to do, substantially the reasonable and essential duties incident thereto? I will state that to you again, so that there may be no possibility of error: Was he prevented from working with reasonable continuity in his usual work, or in such work as he, Mr. Misskelley, is qualified physically and mentally under all the circumstances to do, substantially the reasonable and essential duties incident thereto?) (Now, I instruct you that 'ability to do odd jobs of a comparatively trifling nature does not prevent a recovery.') (So, gentlemen of the jury, it is a question of fact for you. If you find that he has been, since the first of September, totally and presumably permanently disabled from bodily injury occurring or disease originating after the issuance of the policy, as alleged in the complaint, it will be your duty to answer the issue 'Yes.'") To the foregoing portions of the charge in parentheses defendant excepts and assigns error. We see no error in the charge.

The charge is substantially that approved in *Bulluck v. Ins. Co.*, 200 N. C., 642 (646): "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation, or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions, and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.' " *Smith v. Assurance Co., ante,* 387.

In *Austell v. Volunteer State Life Ins. Co.,* 170 S. E., 776, decided 13 September, 1933 (S. C.), that Court approved the construction heretofore placed by the Court on this subject, and said in part: "Our Supreme Court said in the *McCutchen case,* 153 S. C., 401, 151 S. E., 67, 71: 'On the contrary, the courts, giving consideration to the object of the contract, hold that the "total disability" contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner.' "

In *Federal Life Ins. Co. v. Lewis, supra,* is the following: "The word 'total' disability is construed by this Court in the case of *Continental Casualty Co. v. Wynne,* 36 Okla., 325, 129 Pac., 16, which states as follows: 'Total disability, under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists, although the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation.' "

In Cyc. of Ins., *supra,* at p. 5807, it is said: "And where loss of sight of both eyes is expressly declared to constitute total and permanent disability, the ability of the insured, after such a loss, to perform some work for compensation of financial value is immaterial." *Wamboldt v. Ins. Co.,* 191 N. C., 32, 45 A. L. R., 1360.

The court below charged the jury on the third issue as follows: "If you do consider it, it will be your duty to write for your answer such date as the plaintiff by the greater weight of the evidence has satisfied you that the company had notice of his disability, or proof of his disability." Defendant excepted and assigned error to this charge, contending that notice and proof were not synonymous, and that the words used in the contract were "due proof," and that this contemplates more than mere notice of disability. We think the position taken by the defendant is too technical. In *American Nat. Ins. Co. v. Callahan,* 51 S. W. Rep. (2d series), at page 1086, is the following: "The meaning of the word 'due' in the term 'due proof' is determined by the connection in which it is used. It has been the subject of many decisions by the courts. As used here, we think it refers to the time when the proof is to be furnished rather than the sufficiency or conclusiveness of the proof to establish the facts."

In Couch on Insurance, Vol. 7, part sec. 1540, p. 5492, it is stated thus: "The question then arises: What is 'due notice and proof?' It does not rest with the insurers alone to decide this question; rather, the provision requires such notice and proof as may appear to a court to be in accordance with the rules of evidence, and, if such notice and proof

MYERS v. CAUSEWAY CO.

have been given, then there has been a compliance with the provisions. The question, then, as to what is due proof is to be determined by the courts, according to the rules of evidence, and not by the insurers. And due proof of a claim of loss under a policy means such a statement of facts, reasonably verified, as, if established in court, would *prima facie* require payment of the claim, and does not mean some particular form of proof which the insurer arbitrarily demands; nor does the statement of one adequate fact in the proofs exclude others omitted through mistake or ignorance." See sec. 1552.

The charge does not impinge C. S., 564. We do not think the exceptions and assignments of error to the admission of the testimony of Dr. L. N. West, Dr. V. M. Hicks, and Dr. John B. Wright can be sustained. They were admitted to be experts. We see no error in excluding certain questions propounded to Dr. James R. Rogers in regard to the use of ophthalmoscope. The instructions not given, prayed for by defendant, were properly refused. In the instructions to the jury by the court below we see no error. They were carefully and accurately given and the case tried in accordance with the law in this and other jurisdictions. The case of *Thigpen v. Ins. Co.*, 204 N. C., 551, relied on by defendant is easily distinguishable from the present case.

From a careful review of the record and law applicable to the facts, we can see, in law,

No error.