A. BURGEN GOSSETT v. METROPOLITAN LIFE INSURANCE COMPANY.

(Filed 10 April, 1935.)

1. **Trial D a—On motion of nonsuit all the evidence is to be considered in light most favorable to plaintiff.**

On a motion as of nonsuit, all the evidence favorable to plaintiff on the whole record, whether offered by plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable inference therefrom and every reasonable intendment thereon. C. S., 567.

2. **Insurance R c—Evidence of total and permanent disability held sufficient to be submitted to jury.**

Evidence that insured had undergone several successive operations, and had had a nervous breakdown, and because of his nervous, weak, and rundown condition had been unable for a period of two years to perform any work for remuneration or profit, and that there had been no improvement in his condition, *is held* sufficient to be submitted to the jury on the question of insured's total and permanent disability within the meaning of the policies sued on.

3. **Same—**

It is not necessary that insured introduce testimony of a physician that insured is totally and permanently disabled in order for insured to recover on disability clauses in policies of life insurance.

4. **Insurance M e—Question of waiver of proof of total and permanent disability held properly submitted to jury in this case.**

Insured claimed temporary and total disability under a group policy in which he was insured, and insurer paid temporary disability benefits thereunder but denied the permanency of the disability. Insured demanded of insurer's agent forms on which to make proofs of disability under other policies of life insurance taken out with insurer which provided for benefits for total and permanent disability, and defendant's agent refused to furnish such forms on the ground that insured was not entitled to disability benefits under the policies. *Held:* In insured's action on each of the policies the submission of issues as to whether insured furnished due proof of total and permanent disability under each of the policies and whether insurer waived the furnishing of blanks for the production of proof of disability was without error.

5. **Evidence K a—**

In an action on a disability clause in a policy of life insurance a lay witness may testify from his personal observation of insured that in his opinion insured would not be able to do any kind of physical work.

6. **Appeal and Error B b—**

Insurer's contention that insured accepted a check in full payment of insured's claim under a disability clause in a policy of group insurance *held* untenable upon the theory upon which case was tried, there being no pleadings or issues on this phase of the case.

**7. Appeal and Error J e—**

The court's refusal to give instructions requested by defendant on one issue of the case will not be held for error where plaintiff would be entitled to recover notwithstanding the jury's answer to such issue.

**8. Appeal and Error K e—**

Where there is no error in the trial of several issues in the case, but there is error in the trial of the issues relating to the amount recoverable by plaintiff, a partial new trial may be granted on appeal, there being no danger of complication since the issues are entirely separable.

APPEAL by defendant from *Pless, J.,* at December Term, 1934, of BUNCOMBE. Affirmed in part, and reversed in part.

This is a civil action, commenced in the general county court of Buncombe County, North Carolina, wherein the plaintiff seeks to recover certain benefits alleged to be payable in the event of total and permanent disability under certain policies of insurance issued by the defendant upon the life of A. Burgen Gossett. The case was tried before his Honor, J. P. Kitchin, judge, and a jury, at the June Term, 1934, of the general county court. Judgment was rendered in favor of the plaintiff, from which the defendant appealed to the Superior Court, assigning certain errors, among which was the refusal of the court to sustain its motion for judgment as of nonsuit.

The case then duly came on for hearing on defendant's appeal before his Honor, J. Will Pless, Jr., judge of the Superior Court of Buncombe County, at the December Term, 1934. Judge Pless, ruling on each one of defendant's exceptions and assignments of error, refused to sustain said assignments of error and affirmed the judgment of the general county court. The defendant excepted to the signing of this judgment, and to each ruling of the court, and to its failure to sustain each exception and assignment of error, and appealed to the Supreme Court.

The evidence on the part of plaintiff was to the effect: That on 27 December, 1926, he went to work for defendant company in Asheville, N. C., attending to all the company's business and engaged in writing all kinds of insurance that defendant company sold. He quit working for them on 26 February, 1932, on account of ill health. He purchased three policies from the defendant: (1) On 11 January, 1923, an ordinary life insurance policy, No. 3516939-A, for $2,500, the quarterly premium being $14.88, with total and permanent disability provision. The premiums are paid to date. (2) On 12 May, 1925, a life and accident policy of insurance, No. 4251190-A, for $2,414, an ordinary life policy, with total and permanent disability provision. The quarterly payments are $16.53. The premiums are paid to date. (3) The plaintiff was an employee of defendant company. On 1 April, 1929, a group contract policy issued to defendant's employees, plaintiff paid $1.90 a

week on this group benefit until February, 1932. During the time he was sick, the premiums were taken out and he was paid $23.85 a week for forty weeks. This policy had a total and permanent disability provision. This action is brought to recover on the above policies, by plaintiff, for total and permanent disability benefits. The plaintiff quit the service of defendant company on 26 February, 1932, on account of a general nervous breakdown. He started out to find the cause of it. He went to the hospital to have his tonsils removed. He then had his teeth fixed, several filled and quite a few pulled. On 10 April, 1932, he had hemorrhoids pretty bad and went to a hospital for an operation, which was not exactly successful and kept him down until about the first of June, 1932, and defendant ordered him back to work. He was not able to go to work and talked to the manager, who told him to wait a week or two, as he thought he was not able to work. At the suggestion of the manager, he went over the territory to show the new assistant manager. This took about a week. Immediately after that, he had a rectumnal abscess and went back to the hospital. The abscess was opened and drained, or an attempt to drain it, for four or five weeks, and the doctor finally told him that he would have to have an operation to have it cut out. He had no money. The benefits under his little policy were stopped about 29 May, and he owed the hospital. He then got in touch with an osteopath and he treated him for four or five months. He also got in touch with another doctor, who told him that he had to have an operation, which was performed at the Biltmore Hospital, 21 January, 1933. He was treated about six weeks or two months and a second slight operation was performed. The defendant company seemed to think he had gotten rid of all his troubles, but he was still weak and nervous, but went back to the company. He did not think he was able to hold a job down. He asked the manager why the company did not offer him something light and was told that the company felt he was insane. He did not go to a doctor for a long while, but stayed run down and no good. He finally consulted a doctor and took treatment for two or three months. About the latter part of August, 1933, he wanted to do something, and made connection with the Prudential Life Insurance Company. He was really a sick man. He took the best care of himself, but was in a nervous, run-down condition— if he worked a full day his nerves would get so bad that he could not sleep at nights. He tried to work a full week, and two nights of that week he might as well not gone to bed, as he could not sleep. He has stayed in that nervous, run-down condition since—made no money with the Prudential Life Insurance Company, as he could not close a deal after he secured a customer, as he had not been well. Since he left the defendant in February, 1932, he has not seen a good day. He has not been able to do any work or engage in any business for compensation or

profit. He is in a nervous, weak, and run-down condition. He has not been able to perform any work. He submitted to an examination by two of the defendant company's doctors at the company's request. They did not testify at the trial.

In the record, commencing 21 March, 1932, and ending 7 April, 1934, there are ten letters, written by the defendant supervisor of employees group claim, to plaintiff in reference to plaintiff's disability. These letters in answer to plaintiff's letters written to him at defendant's headquarters in New York. These letters of plaintiff claim benefits on account of disability; also a certificate of Dr. R. P. Ivey, on 9 January, 1933, as to his condition and need of an operation. The last letter states: "I immediately filled out the form you sent me over two weeks ago and left it with Mr. Barron to fill out his part, and I understand from his office that it was mailed to you the date after he received it."

The plaintiff, during his sickness, was in bed or on a couch in the house over a year. He had four or five operations in all. His nervous system does not seem to improve much. The defendant paid him a certain length of time, on the group policy, but nothing on the other two policies. The plaintiff testified: "I paid the premiums after I got disabled because I had to, after they refused to get my disability papers to keep them in force."

After he was sick and in bed the general agent of defendant, E. F. Nagle, came to see plaintiff. Plaintiff testified without objection: "His duties as agent were taking care of any business of the company; writing insurance, the same as myself. He had the same duties that I had to perform. In the event that I, as agent of the company and a policyholder, became sick and disabled under one of those policies like I have described. It would be his duty to go to the office and request the blanks of the manager for the man to be examined. That was part of my duties. Mr. Nagle, as agent of the Metropolitan Life Insurance Company, had the same duties I had. It was part of Mr. Nagle's duty, when policyholders were disabled, upon request by them, to furnish them those blanks. Mr. Nagle came to see me while I was in bed. After I got back on the job about the first of July and could not make it, Mr. Nagle was at my house and I asked him to get the forms on which to make the proofs of my disability. I was then drawing temporary disability on the certificate, and he said that he would be glad to get them if I was entitled to them. And he reported to me later that he had gone to Mr. Barron and that he had refused to get them for him, stating that I was not entitled to the benefits under my policies. We talked about my getting those blanks before he told me he would get them. I thought there was a possibility of my getting well when I first talked to him about it, but when he came back later I asked him to get the blanks. When Mr. Nagle reported to me that Mr. Barron had refused to let me

have the blanks, my wife was present. Mr. Nagle lives here in Asheville. He. is still the agent for this insurance company." Plaintiff's testimony was corroborated by his wife and other witnesses.

W. M. Jemison testified, in part: "As to his condition on down to date, I think it is anything but good, the way I would size it up. At the present time, absolutely I do consider him a sick man. Q. Able to do any kind of work? Defendant objects. Overruled. Exception. A. I do not think he is a well man, and I certainly do not think he would be able to do any kind of physical work. From general observation, that is my opinion. As to his nervous condition, I notice he seems to be exceedingly nervous. I am not related to him in any way whatever."

Wm. F. Barron (signed "Boone" in record). This was immaterial, as the party was the defendant's manager. He made the following statement on 31 January, 1933: "How many times have you seen him since disability commenced? A. Ten or fifteen times. Q. Did you find him totally disabled on those occasions? A. Looked to be. Q. When and where did you see him last? A. About two months ago, at my office. Q. Have you any reason to believe that this claim represents a voluntary absence because of his record or for vacation, rest, travel, or to engage in any other business? (If so, state your views or write accompanying letter.) A. No."

The issues submitted to the jury in the general county court of Buncombe County, North Carolina, and their answers thereto, are as follows: "(1) Did the plaintiff furnish to the defendant due proof of total and permanent disability, as required by policy of insurance No. 3516939-A? A. 'Yes.' (2) Did the plaintiff furnish to the defendant due proof of total and permanent disability, as required by policy of insurance No. 4251190-A? A. 'Yes.' (3) Did the plaintiff furnish to the defendant due proof of total and permanent disability, as required by Certificate No. 54, Policy No. 50? A. 'Yes.' (4) Did the defendant waive the furnishing of blanks for the production of proof of disability under Policy No. 3516939-A? A. 'Yes.' (5) Did the defendant waive the furnishing of blanks for the production of proof of disability under Policy No. 4251190-A? A. 'Yes.' (6) Did the defendant waive the furnishing of blanks for the production of proof of disability under Certificate No. 54, Policy No. 50? A. 'Yes.' (7) Did the plaintiff become totally and permanently disabled as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation or performing any work for compensation or profit? A. 'Yes, 26 February, 1932.' (8) If so, from what date is plaintiff entitled to recover benefits under Policy No. 3516939-A? A. 'Yes, 26 February, 1932. $366.12.' (9) If so, from what date is plaintiff entitled to recover benefits under Policy No. 4251190-A? A. 'Yes, 26 February, 1932. $556.89.' (10) If so, from what date is plaintiff entitled to recover benefits under Policy No.

50, Certificate No. 54? A. 'Yes, 12 February, 1932. $900.30.' (11) In what amount, if any, is the defendant indebted to plaintiff? A. '$1,823.31.' "

The material exceptions and assignments of error and other necessary facts will be set forth in the opinion.

*Jones & Ward for plaintiff.*
*John Izard and Harkins, Van Winkle & Walton for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.

On motion to dismiss or judgment of nonsuit the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. An exception to a motion to dismiss in a civil action taken after the close of the plaintiff's evidence, and renewed by defendant after the introduction of his own evidence, does not confine the appeal to the plaintiff's evidence alone, and a judgment will be sustained under the second exception if there is any evidence on the whole record of the defendant's liability. We think the evidence plenary to have been submitted to the jury.

In *Bulluck v. Ins. Co.,* 200 N. C., 642 (646), the following law is well settled in this State: "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation, or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions and the decisions of courts generally have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.' " *Green v. Casualty Co.,* 203 N. C., 767; *Smith v. Assurance Society,* 205 N. C., 387; *Misskelley v. Ins. Co.,* 205 N. C., 496; *Baker v. Ins. Co.,* 206 N. C., 106.

The language in the policies in this action are practically all the same: "Has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit."

We will consider the questions involved, as set forth in defendant's brief. *First:* "Is the plaintiff entitled to recover total and permanent disability benefits under a policy of insurance where the evidence shows

that he has been ill, but no physician testifies, and no evidence of 'permanency' is introduced?"

We do not think this question, as a whole, is borne out by the facts. Plaintiff testified, unobjected to, to the effect that since he left the defendant in February, 1932, he has not seen a good day. He has not been able to do any work or engage in any business for compensation or profit. He is in a nervous, weak, and run-down condition. He has not been able to perform any work. In this jurisdiction it has been held that to recover on policies, as in this case, it is not necessary that a physician must testify to total and permanent disability.

In *Bulluck v. Insurance Co., supra,* at pages 646-7, speaking to the subject: "The ability of a party to perform physical or mental labor is not a question of such exclusively technical significance as to permit expert testimony to be given conclusive effect. Indeed, the identical question arose in *Fields v. Assurance Co., supra* (195 N. C., 262), in which the physician had testified that the plaintiff was not in his opinion permanently disabled. Moreover, there was a conflict between the testimony of physicians and the plaintiff with respect to permanent disability, and it has been the uniform policy of the law of this State, for many years, to submit conflicting evidence to the jury upon the theory that in the last analysis the jury is the weigh-master of the evidence." *Misskelley v. Ins. Co., supra; Guy v. Ins. Co.,* 207 N. C., 278.

*Second:* "Is the notice of temporary disability furnished to the company under one policy to be considered a sufficient compliance with the condition in a different policy requiring proof of total and permanent disability?"

We do not think this question is borne out by the entire record. In the group policy, the correspondence between the litigants showed that plaintiff was claiming temporary disability, and also permanent disability. Defendant was denying permanent disability. As to the policies, plaintiff asked the general agent of defendant company for forms on which to make the proofs of his disability. This was refused by Mr. Barron, defendant's general agent, on the ground that he was not entitled to the benefits under his policies. The defendant denied liability on the ground that plaintiff was not totally and permanently disabled, and also that plaintiff had not furnished due proof.

In *Guy v. Ins. Co., supra,* at p. 279, it is said: "It is established by the decisions in this jurisdiction that a provision in an insurance policy requiring proof of loss, disability, or death is waived by the company's denial of liability, or refusal to pay, upon grounds other than failure to furnish such proof. *Misskelley v. Ins. Co., supra* (205 N. C., 496)."

We think that the demand by plaintiff on the general agent of defendant company, and his refusal to furnish forms for plaintiff to make

proof of disability, on the ground that plaintiff was not entitled to benefits under the policies—under the facts and circumstances of this case, was properly left to the jury under the issues. *Paramore v. Ins. Association,* 207 N. C., 300 (304); *Colson v. Assurance Co.,* 207 N. C., 581; C. S., 6479, subsec. (6).

*Third:* "Did his Honor, the judge of the general county court, err in his ruling on the admission of evidence, and in propounding to the jury the law applicable to the case?"

The defendant contends that the following testimony of a lay witness, Jemison, was incompetent: "I do not think that he is a well man, and certainly do not think he would be able to do any kind of physical work. From general observation, that is my opinion."

We do not think this exception and assignment of error can be sustained. The authorities are to the contrary. *Gasque v. City of Asheville,* 207 N. C., 821. The case of *Potts v. Ins. Co.,* 206 N. C., 257, is distinguishable. Under Group Policy No. 54, it was contended by defendant that plaintiff accepted a check in full payment. There are no pleadings or issues to that effect, and we do not think, from the theory on which the case was tried, that defendant's position is tenable. The issues submitted to the jury as to the furnishing of due proof of disabilities under the policies were all answered by the jury in favor of plaintiff. It is well settled that if the verdict is correct on either one of the aspects, it will support the judgment. From the view we take of the law in this case, we see no error in the refusal of the court to grant defendant's request for special instructions.

*Fourth:* "Is the sum awarded by the jury in excess of the amount provided by the policies of insurance sued upon?" We think so.

Exceptions and assignments of error made by defendant present the question as to the correctness of the jury's answers to issues 8, 9, 10, and 11. There is no error in the answers to all the other issues except these issues. As to these issues, there must be a new trial.

"In *Lumber Co. v. Branch,* 158 N. C., at p. 253, the law is thus stated: 'It is settled beyond controversy that it is entirely discretionary with the court, Superior or Supreme, whether it will grant a partial new trial. It will generally do so when the error or reason for the new trial is confined to one issue, which is entirely separable from the others, and it is perfectly clear that there is no danger of complication. *Benton v. Collins,* 125 N. C., 83; *Rowe v. Lumber Co.,* 133 N. C., 433.' *Whedbee v. Ruffin,* 191 N. C., at p. 259." *In re Will of Bergeron,* 196 N. C., 649 (652); *Lumber Co. v. Power Co.,* 206 N. C., 515 (522).

We find no error on issues 1, 2, 3, 4, 5, 6, and 7, and the judgment affirmed on these issues. We find error on issues 8, 9, 10, and 11, and judgment reversed on these issues.