WILLIE S. EDWARDS v. NATIONAL COUNCIL, JUNIOR ORDER UNITED AMERICAN MECHANICS BENEFICIARY DEGREE.

(Filed 24 September, 1941.)

**1. Trial § 22b—**

Upon motion to nonsuit, the evidence tending to support plaintiff's cause of action is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Trial § 23—**

The fact that there are discrepancies and contradictions in plaintiff's evidence does not justify the granting of defendant's motion to nonsuit, the credibility of the evidence being for the jury.

**3. Appeal and Error § 39—**

Ordinarily, appellant's exception to the admission of evidence, even if incompetent, cannot be sustained when it appears that other witnesses testified to the same import without objection, since in such instance the testimony objected to is rendered harmless.

**4. Insurance § 34e: Evidence § 46—Nonexpert witness may testify as to insured's inability to follow gainful occupation.**

Plaintiff insured introduced evidence that he suffered serious physical injuries in an accident, which he contended resulted in permanent total disability, that his life work was that of a farmer, but that he had worked for a tobacco warehouse for a short time before the accident. Insured also testified that his injuries incapacitated him for work at the warehouse, and there was no evidence to the contrary. *Held:* Nonexpert opinion evidence based upon personal observation of the witnesses that insured at no time since his injury had been able to do with reasonable regularity the essential duties of a farmer, is competent, and insurer's objection thereto on the ground that the testimony related to only one occupation when the evidence discloses that the insured had two occupations, is untenable.

**5. Insurance § 34a—**

Total permanent disability as used in disability clauses in life insurance policies means permanent disability rendering insured unable to perform with reasonable continuity the duties of his usual occupation or of any other occupation he is reasonably qualified physically and mentally, under all the circumstances, to pursue, and insured's ability to do odd jobs of comparatively trifling nature does not preclude recovery.

**6. Insurance § 34c—**

Insured alleged total permanent disability resulting from an accident. *Held:* It was competent for insured to offer evidence, in addition to evidence of the disability pleaded, that he also had heart disease in order to show that he could not in a reasonable time equip himself to follow other similar occupations.

**7. Insurance § 34b—**

Insurer's denial of total and permanent disability is a waiver of the condition of the policy requiring proof of disability, since such denial is equivalent to a declaration by insurer that it will not pay though proof be furnished, and therefore insurer's objection to the evidence introduced by insured relating to proof of claim is immaterial. In this case insured testified without objection that he had filed proof of claim on blanks sent to him by insurer prior to the institution of the action.

APPEAL by defendant from *Harris, J.,* and a jury, at February Term, 1941, of NASH. No error.

The plaintiff brought this action against defendant on a Certificate No. 103156 of insurance, and endowment at age 70, issued by National Council, Junior Order United American Mechanics of the United States of North America, Beneficiary Degree to Willie S. Edwards of Magnolia Council No. 421, dated 1 November, 1935, which provides, *inter alia,* as follows:

"If the member shall furnish to the Order due and satisfactory proof that he has become Totally and Permanently Disabled by bodily injury or disease, from a cause originating after membership of one full year, and the payment of a full year's rate, and prior to the attainment of the age of seventy (70) years, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work whatever for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than ninety days, the Order will pay to the member $2,000.00 (Two thousand dollars) upon surrender of this Certificate properly receipted."

The defendant, after denying the material allegations of the complaint, for a further answer and defense says: "That the defendant denies any liability or responsibility whatever for that proof of total and permanent disability has not been furnished as required by the contract between plaintiff and defendant and until that is done there is no liability whatever on the defendant; that the plaintiff has not followed the contract as to the proof of total and permanent disability and the defendant is justified in refusing payment not only on that ground but upon the further ground that the plaintiff is not totally and permanently disabled."

The plaintiff testified, in part: "I was born and reared at the same place I now live in Coopers Township. I am 34 years old. Up to the time I was hurt on October 12, 1938, I was engaged in farming, doing everything that came into hand, mauled, sawed, cut and hauled wood, plowed tobacco, set tobacco, picked cotton. I farmed myself and lived with my father. After I got married I took my wife there and have been living there ever since. I am not equipped mentally and physically to do any kind of work other than farming when I was able to farm. My education was very limited. I finished the fifth grade. I have not specialized in any branch of work other than farming. I am married and have one child. I am a member of The Junior Order United American Mechanics, Magnolia Council No. 421, Nashville R. F. D. I joined 12 or 14 years ago and am a paid-up member, active in the lodge. I have paid every premium on my certificate of insurance since it was issued up to now. The night of the 12th of October, 1938, myself and four others were headed to Henderson with a load of tobacco on a trailer when a wheel run off and we were out fixing the wheel. I pulled across from the hard surface and a negro came along and ran over us and killed one man with us and put three others besides myself in the hospital. It broke my back in three places, fractured my skull and hurt my ankle and wrist and different little things. I was knocked out for nine days. I was picked up by an ambulance from Louisburg and carried to Park View Hospital; stayed there 23 days, carried home on an ambulance and carried backward and forth to the hospital to be examined and dressing my head and later when I quit going to the hospital, Dr. Wheeless, from Spring Hope, would go back and forth to my home and dress my head. I wore a cast ten and a half months and it was taken off and I wore a wide belt, 10 or 12 inches, and still do. Depends on my back, how stiff it gets, and if I do a little walking and my back gets sore, I wear it a day or two and pull it off. I wore a solid cast from my shoulders down across my legs below my waist line across my hips for ten and one-half months. During the time I was wearing the cast I filed a claim with the defendant for the benefits provided in this policy, but I did not get paid. This scar on the side of my face and head came from the injury. I will put my finger inside the dent. The left side of my head is just a little flat. I have severe headaches in that side of the head. It starts as near around about that sunken place as I can tell and goes around that left eye. I have it usually two or three times a week and have to sleep it off. Since my injury I cannot bend over halfway. To get something on the floor I have to squat down or get down on my knees; I can't bend over. I have shortness of breath, get awfully weak or tired if I do much walking or any unnecessary trying to get around. I have not been able to do

any work on the farm since I was injured October 12, 1938. I have tried to do work and can't do it. I was examined lately by Dr. A. L. Daughtridge of the Sanatorium in Rocky Mount. I filed proof of claim on blank sent me by the company four or five months after I was injured. My injury has been continuous since the wreck. I am not improving that I can tell. If I do too much walking in the daytime I am so stiff I have to have my wife tie my shoes for me. I can walk or stand on my feet about an hour at the time. I do not very often spend any time in bed resting. Sometime, I will, but hardly ever. (Cross-examination.) My father and I operate the farm we live on and have been operating it regularly. I operated it this year. Last year I hired a colored boy to do it. I look after it. My father runs a store. I took in from the farm in 1940 five or six hundred dollars. I got a living off of it but I didn't pay expenses. I told the jury that I had never engaged in any occupation in my life except farming. I worked at the Farmers Warehouse in Henderson that year I got hurt. Because I was employed there, not as a farmer but working at that warehouse for $100.00 a month. : . . At the time I was working for the warehouse, I hauled tobacco. I did not get a commission for drumming; the warehouse paid me by the month. I don't know whether they put me on a salary because I got to making so much commission or not. I went out and got the tobacco if I could, got the load of tobacco and hauled it to the warehouse. . . . The warehouse did not pay a hundred dollars for hauling tobacco. When the farmers carried their own tobacco they didn't pay me but if I carried it they did. The warehouse paid me by the month. I don't know whether you call it a hundred dollars a month for drumming or hauling. I wasn't able to work there last year, so I didn't ask for the job back. . . . That I was employed solely for the purpose of soliciting or drumming business to get the farmer to take it there. . . . The Fall I got hurt I drummed tobacco and hauled it to the warehouse. Before I got hurt I made a living and made a little money, about like the average farmer. I now have a boy hired to work on the farm. I can tell him some things to do. My back is pretty weak when I walk and stand much at the time. I can't walk over plowed ground. Since I got hurt my father has given me practically all I made. Before I was hurt I farmed on halves with him. I am getting it all now except what I give the fellow and the expenses."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Has plaintiff, since February 20, 1939, been totally and permanently disabled by bodily injury and disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work whatever for compensation, gain or profit, or from following any gainful occupation? Answer: 'Yes.'

"2. Was due and satisfactory proof submitted defendant before the institution of this suit that plaintiff had become totally and permanently disabled by bodily injury or disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work whatever for compensation, gain or profit, or from following any gainful occupation? Answer: 'Yes.' "

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Itimous T. Valentine for plaintiff.*
*Sharp & Sharp for defendant.*

CLARKSON, J. At the close of plaintiff's evidence the defendant made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The defendant introduced no evidence. The motion was denied and in this we can see no error.

In *Lincoln v. R. R.,* 207 N. C., 787 (788), it is written: "On considering a motion to nonsuit under the Hinsdale Act, C. S., 567, or a demurrer to the evidence, it is established by numerous decisions: 1. That the evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is 'entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.' 2. That mere discrepancies and contradictions, even in the plaintiff's evidence, are matters for the jury and not for the court," citing authorities.

The defendant complains of the admissibility of opinion evidence about plaintiff's ability to engage in one occupation, when the evidence discloses he had two occupations. The plaintiff testified, "I have not been able to do any work on the farm since I was injured October 1, 1938. I have tried to do work and can't do it. . . . My injury has been continuous since the wreck. I am not improving that I can tell. If I do too much walking in the daytime I am so stiff I have to have my wife tie my shoes for me, *I can walk or stand on my feet about an hour at the time."*

The first issue is as follows: "Has plaintiff, since February 20, 1939, been totally and permanently disabled by bodily injury and disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work whatever for compensation, gain or profit, or from following any gainful occupation?" The jury answered the issue "Yes." This issue is according to the terms of the policy. All

the evidence is to the effect that plaintiff's life work was that of a farmer. The work at the warehouse was not his ordinary calling and all the evidence was to the effect that after his injury he was incapacitated to work at the warehouse. Plaintiff testified, "I wasn't able to work there last year, so I didn't ask for the job back." Plaintiff was incapacitated to work at the warehouse and there was no evidence to the contrary. Plaintiff's life work was that of a farmer. Numerous and sundry witnesses testified in the negative to the following, or substantially the following, question: "In your opinion, has Mr. Edwards, at any time since he was injured in October, 1938, been able to do with reasonable regularity the essential duties of a farmer?" The defendant objected and excepted to many of these questions—to others it did not.

In *Shelton v. R. R.,* 193 N. C., 670, at p. 674, we find: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost." *Tillett v. R. R.,* 166 N. C., 515; *Beaver v. Fetter,* 176 N. C., 334; *Marshall v. Telephone Co.,* 181 N. C., 410; *S. v. Hudson,* 218 N. C., 219 (230). But we consider it well settled that the questions were competent.

In *Keller v. Furniture Co.,* 199 N. C., 413 (417), *Adams, J.,* for the Court said: "The testimony of these witnesses did not involve a question of science or a conclusion to be drawn from a hypothetical statement of facts; it was elicited as a matter within their personal knowledge, experience and observation. The exception to the general rule that witnesses cannot express an opinion is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning; it includes the evidence of common observers testifying to the results of their observation. *Britt v. R. R.,* 148 N. C., 37; *Marshall v. Telephone Co.,* 181 N. C., 292."

In *Leonard v. Ins. Co.,* 212 N. C., 151 (155), it is said: "We think it was competent to admit opinion evidence of nonexpert witnesses to testify as to the ability to engage in work."

In *Bulluck v. Ins. Co.,* 200 N. C., 642 (646), *Brogden, J.,* after citing many authorities, says: "The reasoning of the opinions seem to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation, or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions, and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge,

must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.' " *Misskelley v. Ins. Co.*, 205 N. C., 496 (506-7); *Smith v. Assurance Society,* 205 N. C., 387; *Fore v. Assurance Society,* 209 N. C., 548; *Blankenship v. Assurance Society,* 210 N. C., 471; *Leonard v Ins. Co., supra.*

The defendant contends that evidence of plaintiff having heart trouble should not have been permitted, as it was not pleaded. Dr. Daughtridge said, among other things, that an examination of Mr. Edwards' heart showed a leaking heart and that a fluoroscopic examination showed his heart to be enlarged with typical shape found in this type of heart disease. And again, that "Mr. Edwards has already shown early signs of heart failure and that if he puts greater strain on the heart, the heart would not be able to bear it."

It was not necessary to plead heart trouble in order to offer evidence of heart trouble as another reason why the plaintiff appellee could not equip himself within a reasonable time to do some work similar to that of farming. Speaking to this question in *Leonard v. Insurance Co., supra,* the Court, at p. 155-6, said: "The evidence of plaintiff which defendant objected to, as to the nearsightedness of plaintiff, we think was competent under the facts and circumstances of the case. This was admitted by the court, for the purpose of showing that the plaintiff could not within a reasonable time equip himself to be a bookkeeper, conduct a store, or do anything else that required good eyesight. . . . It was wholly unnecessary to refer to the nearsightedness of the plaintiff in his proof of claim, in his specifications of disability, or anywhere else except in his evidence."

The second issue was as follows: "Was due and satisfactory proof submitted defendant before the institution of this suit that plaintiff had become totally and permanently disabled by bodily injury or disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work whatever for compensation, gain or profit, or from following any gainful occupation?"

Defendant complains that portions of the complaint and answer introduced in evidence by plaintiff in reference to proof of claim, was erroneous. We think this is immaterial. Defendant denied that the plaintiff was "totally and permanently disabled," and complained that the plaintiff did not furnish "due and satisfactory proofs that he had become totally and permanently disabled." Without objection plaintiff testified, "I filed proof of claim on blanks sent me by the Company four or five months after I was injured."

In *Misskelley v. Ins. Co.*, 205 N. C., 496 (505), quoting from *Gerringer v. Ins. Co.,* 133 N. C., 407 (415), we find: "The weight of authority is in favor of the rule that a distinct denial of liability and

refusal to pay, on the ground that there is no contract or that there is no liability, is a waiver of the condition requiring proof of loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished," citing numerous authorities.

The exceptions and assignments of error to the charge of the court below cannot be sustained. From a careful reading of the charge, we think the court below applied the law applicable to the facts; in fact, in the charge the court read the law from decisions of this Court and applied them to the facts in the case. From the view we take of the case we think the special instructions prayed for by defendant were properly denied. From the whole record we find no prejudicial or reversible error.

No error.