CARRIE H. KINSEY, ADMINISTRATRIX, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 9 March, 1921.)

**Insurance, Life—Policies—Contracts—Suicide—Evidence—Questions for Jury—Trials.**

Upon the defense of suicide in an action to recover upon a policy of life insurance, evidence tending to show that the insured was a nervous, irritable, and high-tempered man; that a few minutes before he had finished eating dinner with his family and had gone into an adjoining room, and that his wife, upon hearing a noise, had gone into this room, and found her husband lying on the floor with a pistol wound, from his own pistol, evidently taken by him from the shelf of a book case in this room, where he kept it, fired from very close range into his temple, is sufficient to go to the jury upon the question of whether the defendant had intentionally taken his own life.

APPEAL by plaintiff from *Bond, J.,* at December Term, 1920, of JONES.

Civil action to recover upon a life insurance policy issued by the defendant to plaintiff's intestate, Guy T. Kinsey. The case turns upon a single question. Defendant admitted the execution of the policy and its liability thereon, unless its plea of suicide within the stipulated period was found to be valid. Only one issue was submitted to the jury, and answered by it as follows:

KINSEY v. INS. CO.

"Did the insured, Guy T. Kinsey, die by his own hand or act, with intent to commit suicide? Answer: 'Yes.'"

Judgment on the verdict in favor of defendant. Plaintiff appealed.

*Rouse & Rouse for plaintiff.*
*Brooks, Hines & Kelly and T. D. Warren for defendant.*

PER CURIAM. Plaintiff's chief exception is to the court's refusal to instruct the jury that the evidence was not sufficient to warrant a finding in favor of the defendant. Bearing upon this motion, the following is taken from the plaintiff's brief:

"Briefly summarized, the deceased had only a few minutes before finished eating dinner, he had left the table, going into an adjoining room. His wife heard a noise which attracted her attention. She went to the room and found her husband lying on the floor with a (pistol-shot) wound, which was shown to be in his temple, a little above and a little to the front of his right ear. The witnesses locate his body slightly different, but in the main it is agreed by all that his feet were some distance, variously estimated from two to three feet, from a book case, that his head was towards the door, and his body lying alongside of, with his right arm slightly under a table that stood between the bookcase and the door. The deceased's pistol, which usually stayed upon the bookcase, was found slightly under the bookcase from the deceased's head as it lay upon the floor, the distance to the pistol was in addition to the length of his body, two or three feet to the bookcase."

In addition, there was evidence tending to show that the intestate was a heavy drinker; that he had been drinking for two days immediately preceding his death; that he was a nervous, irritable, and high-tempered man; that the wound on his head was black and ragged, and the hair scorched, indicating that the pistol was held in close proximity to his head at the time it was fired.

Upon this evidence we think his Honor very properly submitted the issue to the jury, and that they were warranted in answering it in the affirmative.

We have carefully examined the record and plaintiff's exceptions, and find no error of which plaintiff can justly complain.

No error.