SUE I. NELSON, ADMINISTRATRIX OF THE ESTATE OF MEYNARDIE NELSON, DECEASED, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 17 September, 1930.)

**1. Insurance J c—Failure to give immediate notice of disability will not work forfeiture where insured is incapable of giving such notice.**

Where a policy of life insurance contains a clause waiving the payment of premiums and providing for the payment to the insured of a certain amount of money monthly upon receipt from the insured and

acceptance by the company of due proof that the insured has become totally and permanently disabled: *Held*, where the insured has become mentally incapable of furnishing such proof or having it furnished for him, and is without fault, his failure to give immediate written notice will not work a forfeiture, and where such proof is furnished more than a year after the beginning of the disability by the insured's son upon his discovery of the policy, the insurer is liable for the amount of the monthly disability payments from the time of the disability to the death of the insured and for a premium paid on the policy after the beginning of such disability; and *held further*, evidence of the insured's incapacity to give such notice was sufficient to go to the jury in this case.

**2. Trial D a—Upon motion as of nonsuit all evidence is to be taken in the light most favorable to the plaintiff.**

Upon a motion as of nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, is to be taken and considered in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment thereof and every reasonable inference to be drawn therefrom.

**3. Evidence K c—Nonexpert witnesses may testify as to physical and mental incapacity of one whom they have had opportunity to observe.**

Where in an action on a life insurance policy the capacity of the deceased insured to have given notice of disability is in issue, it is competent for those having had knowledge of and an opportunity to observe the deceased to testify that his mental and physical condition was such that he had been wholly incapacitated from giving such notice, both as relevant and material to the inquiry and as a "shorthand statement of a collective fact."

**4. Trial E e—In this case held: refusal of trial court to give instructions requested was immaterial.**

Where the verdict of the jury makes the refusal of the trial court to give special instructions requested immaterial, and the charge to the jury taken as a whole is correct and covers all material aspects of the law presented by the evidence, and the issues submitted were proper and determinative of the controversy, the refusal to give the requested instructions will not be held for error.

APPEAL by defendant from *Small, J.,* and a jury, at September Term, 1929, of WARREN. No error.

This is an action brought by plaintiff, administratrix, against the defendant, to recover on a policy issued by defendant to her intestate. The policy, No. 175188, was issued on 15 November, 1922. The annual premium on the policy, in advance, was $1,090.75. The life of plaintiff's intestate was insured for $25,000, and the policy contract contained the following—the basis of this action: "Rider attached to and forming part of Policy No. 175188, issued to Meynardie Nelson, total and permanent disability. If, after one full annual premium shall have been

paid on this policy and before default in the payment of any subsequent premium, the insured shall furnish to the company due proof of entire and irrevocable loss of the sight of both eyes, · . . . or that he has been wholly and continuously disabled by bodily injuries ·or disease other than mental and will be permanently, continually and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit, provided that such total and permanent disability shall occur before the anniversary of the policy on which his age at the nearest birthday is 60 years, the company, by endorsement in writing on this contract will agree to pay (a) The premiums which shall become payable after the accrual and proof of said disability and during the continuance thereof, and (b) commencing immediately from the acceptance by the company of the original proofs of disability provided the insured is still disabled, a monthly income during the lifetime of the insured prior to the maturity of this policy as an endowment or death claim, of one per cent of the face amount of this policy, the amount otherwise payable at the maturity of this policy shall not be reduced by any premiums or installments paid under the above provisions. If disability is total, but not obviously permanent, it shall be presumed to be permanent after continuous total disability for three months, and the waiver and installments shall accrue from the beginning of the fourth month of such continuous total disability. Upon receipt of due proof that the insured has, for more than 60 days immediately prior to the filing of such proofs, been continuously and wholly disabled through loss of reason or through any mental disease and presumably will be permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit, after one full annual premium shall have been paid and before a default in the payment of any subsequent premium, provided that such total and permanent disability shall occur before the anniversary of the policy on which his age at nearest birthday is 60 years, the company will, by endorsement in writing on this contract grant to the insured the benefits of paragraph (a) above, but he shall not be entitled to the benefits of paragraph (b)."

The premiums have been paid by the insured in accordance with the terms of the policy. Plaintiff's intestate died 27 February, 1929. The beneficiary of the $25,000 policy was the plaintiff, who has been paid that sum by defendant. The disability benefits were paid from 17 October, 1928, until the death of plaintiff's intestate, to Sue I. Nelson, guardian of Meynardie Nelson.

It is admitted that if any total and permanent disability occurred, it occurred before the anniversary of the policy on which insured's age at nearest birthday was 60 years, and after the payment of one full annual premium on the policy and before default of any subsequent premiums on said policy sued on.

The issues submitted to the jury and their answers thereto were as follows:

"1. Did Meynardie Nelson, the insured, become wholly and continuously disabled by disease, other than mental, and was he permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit, as alleged in the complaint? Answer: Yes.

2. If so, from what date? Answer: 1 April, 1927.

3. If he became so disabled prior to 17 October, 1928, was he continuously so insane that he was incapable of, and unable to furnish proof of such disability, as required by the terms of the policy, or to procure some one to do it for him? Answer: Yes.

4. If so, from what date? Answer: 1 April, 1927.

5. What amount, if any, is the plaintiff entitled to recover of the defendant on account of premium paid after the total disability of the insured? Answer: $1,090.75, with interest.

6. What amount, if any, is the plaintiff entitled to recover of defendant on account of monthly benefits under said policy? Answer: $4,641.66⅔."

The court below rendered judgment on the verdict.

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*Travis & Travis, Joseph P. Pippen and J. M. Picot for plaintiff.*
*Geo. C. Green and Brooks, Parker, Smith & Wharton for defendant.*

CLARKSON, J. The defendant, at the close of plaintiff's evidence and at the close of all the evidence, made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled the motions and in this we can see no error.

In *Rhyne v. Insurance Co.,* 196 N. C., 717, *Stacy, C. J.,* speaking for a unanimous Court, citing numerous authorities, said, at p. 718: "It is considered by a majority of the courts that a stipulation in a contract of insurance requiring the assured, after suffering injury or illness, to perform some act, such as furnishing to the company proof of the injury or disability within a specified time, ordinarily does not include cases where strict performance is prevented by total incapacity of the assured to act in the matter, resulting from no fault of his own, and that performance within a reasonable time, either by the assured after regaining his senses or by his representative after discovering the policy, will suffice. . . . (p. 719). But we are content to place our decision on the broad ground that, notwithstanding the liberal meaning of the words used, unless clearly negatived, a stipulation in an insurance

policy requiring notice, should be read with an exception reasonably saving the rights of the assured from forfeiture when, due to no fault of his own, he is totally incapacitated from acting in the matter. That which cannot fairly be said to have been in the minds of the parties, at the time of the making of the contract, should be held as excluded from its terms." A petition to rehear the Rhyne action was denied 31 May, 1929. See *Rhyne v. Jefferson Standard Life Ins. Co., ante,* 419.

In Vol. 2, C. S., under Insurance, subchap. 5, accident and health insurance, C. S., 6479, dealing with standard provisions in policy under subsec. 5, is the following: *"Failure to give notice within the time provided in this policy shall not invalidate any claim, if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."* (Italics ours.)

It will be noted that under the standard provisions in policies, where time limit is fixed, yet the General Assembly realizing that a hard and fast rule should not always be applied, put in the above provision to meet varying contingencies that might arise. Although the above provision was not cited to this Court, in the case of *Mewborn v. Assurance Corporation,* 198 N. C., at p. 158, yet this Court held: "The expression 'immediate written notice,' as used in the policy, we apprehend, was intended to impose upon the plaintiff the exercise of reasonable diligence in giving the required notice, which, under the apparent weight of authority, should be measured by his ability and opportunity to act in the premises. *Carey v. Farmers, etc., Ins. Co.,* 27 Ore., 146, 40 Pac., 91; *Rhyne v. Ins. Co.,* 196 N. C., 717, 147 S. E., 6." Under C. S., 6479, *supra,* latter part subsec. 4, we find: "If Form (A) or Form (C) is used the insurer may at its option add thereto the following sentence: 'In event of accidental death immediate notice thereof must be given to the insurer.'"

The defendant contends that under the policy contract sued on filing of proofs of disability was a condition precedent to the attaching of liability. We cannot so hold. The *Rhyne case, supra,* was thoroughly considered by this Court, and we see no reason to change our opinion. There is no question made, and it is admitted that plaintiff's intestate paid all the premiums demanded by defendant for disability benefits to plaintiff's intestate when "wholly and continuously disabled by bodily injuries or disease other than mental and will be permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit," etc.

Plaintiff's intestate under the provisions of the policy was clearly entitled to be paid from the time he was "wholly and continuously disabled," etc., but defendant contends that the policy contract, although the premiums have been paid, for the disability, as found by the jury,

occurred 1 April, 1927, that there is a condition precedent that makes the filing of proofs necessary before liability attaches. The defendant was paid for the disability benefits and there was disability commencing 1 April, 1927, and continued. The defendant's contention, under the facts of this case, is. too technical. If we should so hold, the policy contract would be as it were a body without a heart.

With the law settled in this jurisdiction, as above stated, what was the evidence? The battle waged in the court below was over these issues. We set them forth with the answers by the jury: "(1) Did Meynardie Nelson, the insured, become wholly and continuously disabled by disease, other than mental, and was he permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit, as alleged in the complaint? Answer: Yes. (2) If so, from what date? Answer: 1 April, 1927. (3) If he became so disabled prior to 17 October, 1928, was he continuously so insane that he was incapable of, and unable to furnish proof of such disability, as required by the terms of the policy, or to procure some one to do it for him? Answer: Yes. (4) If so, from what date? Answer: 1 April, 1927."

It is the settled rule of practice in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, is to be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

The evidence in the present action tended to show: That the family of plaintiff's intestate was unaware of the provisions of the policy until plaintiff's intestate's son and brother-in-law, who had charge of plaintiff's intestate's business, the Nelson Vertical Paper Cutter Co., had to pay a premium on the policy and went to the lock box and got the policy and found it was a disability benefit policy. In answer to a telegram sent defendant's assistant manager, the defendant answered as follows: "Greensboro, N. C. W. A. Johnson, Nelson Vertical Paper Cutter Co., Littleton, N. C. We were advised last week by our Raleigh office that Mr. Nelson was incapable of managing his affairs, and requested them to advise family to have a guardian appointed, as disability benefits cannot be paid except to guardian. We have been holding file awaiting guardianship papers. Letter follows. Jefferson Standard Life Insurance Co."

Plaintiff was appointed guardian, and total and permanent disability information was submitted to defendant on 17 October, 1928. From that date until plaintiff's intestate died the disability benefits were paid by

defendant to plaintiff as guardian. This action is for the disability benefits prior. In the information furnished defendant, on 17 October, 1928, we find: "(7) Give names and addresses of attending physicians: Dr. L. H. Justis, Littleton, N. C. (8) State fully all symptoms in your condition from its beginning to the present time—weakness, eruptions on hands and feet. (9) On what date were you forced to give up your occupation or work? Feby., 1927. (10) Are you now confined to your bed? Yes. Home? Yes. If so, how long have you been so confined? Practically entire time since Feby., 1927—home and bed. (11) Have you been an inmate of a hospital, asylum, sanitarium, home, or health resort of any kind? If so, give dates, place and full particulars. Washington Sanitarium, Washington, D. C., 9/6/27. Tucker Sanitarium, Richmond, Va., 5/27/27." This was accompanied by Friend's statement, in part as follows: "(7) When did his present illness begin? About 3 years ago. (8) What is the nature of his present illness? General debility, superinduced, in my opinion, by pellagra. (9) Is he at the present time improving? Can't say. (10) Is he, in your opinion, totally and permanently incapacitated from following any business or profession for gain or profits? Yes." The claimant's statement was signed by plaintiff's intestate, but prepared by the bookkeeper for plaintiff's company, with plaintiff's intestate's son and in the absence of plaintiff's intestate.

Plaintiff's intestate's physician attended him from 8 November, 1926. He had pellagra, complicated by mental symptoms. The physician testified: "In my opinion, Mr. Nelson was continuously disabled from the 8th of November, 1926, because he was not rational or apparently rational, long enough, I do' not think, to transact any business that would be satisfactory. His physical condition, during that time, was very poor. . . . *I don't think he had the ability to attend to business, physical or mental,* from that time until 17 October, 1928. In my opinion *he was physically and mentally diseased."* The defendant admitted and paid disability benefits from 27 October, 1928, when guardian was appointed until his death.

Similar testimony was given by his wife, two sons, brother-in-law and druggist. His wife was asked the following: "What, in your opinion, was his physical condition at that time, with respect to ability to follow any occupation for remuneration or profit? Answer: *He was both disabled mentally and physically,* I know, to pursue any occupation. *I do not reckon that; I know that.* Q. How long did that condition continue? A. It grew worse all the time, and we usually had an attendant with him all the time, because he had these hallucinations or delusions all the time, and of course we were afraid for him to go anywhere, and I watched him all the time, or one of the boys watched him

15—199

every night. We had a colored man all the time except when one of the boys was with him." These and similar questions and answers were objected to by defendant when the questions were asked numerous witnesses for plaintiff, but the court below allowed them and in this we think there was no error.

We do not think that *Stanley v. Lumber Co.,* 184 N. C., 302, applicable. That was a personal injury case, and the witness could not express an opinion on the point in issue, but there are exceptions. See *Barnes v. R. R.,* 178 N. C., 264.

In *White v. Hines,* 182 N. C., at p. 279, the law is thus stated: "The defendants offered in evidence a paper-writing purporting to be the ward's receipt for $554 and a release of the railroad company from all liability resulting from the derailment. The plaintiff replied that Samuel A. White was mentally incapacitated to such an extent that at the time of its execution he could not comprehend the nature and effect of the instrument to which he had affixed his signature. Evidence as to White's mental condition, then, was both material and essential. The defendants contended that testimony to the effect that he 'was crazy' or 'not normal,' was the statement of a positive conclusion, or fact, and, for this reason, incompetent. But in this jurisdiction it is established that a nonexpert witness, who has had conversation and dealings with another, and a reasonable opportunity, based thereon, of forming an opinion as to the mental condition of such person, is not disqualified on the ground that his testimony is a mere expression of opinion. *McLeary v. Norment,* 84 N. C., 235; *In re Stocks,* 175 N. C., 224; *In re Broach,* 172 N. C., 522. One not an expert may give an opinion, founded upon observations, that a certain person is sane or insane. *Whitaker v. Hamilton,* 126 N. C., 470; *Clary v. Clary,* 24 N. C., 78."

From the finding of the jury that the disability took place 1 April, 1927, we think that the refusal to give certain instructions prayed by defendant becomes immaterial. The contentions of the parties were fairly given and the charge covered all the material aspects of law presented by the evidence. The issues submitted were proper from the pleadings and determinative of the controversy. The charge does not impinge C. S., 564. Taking the charge as a whole, we do not think there was any error in not giving the prayers for instructions as prayed for by defendant. Taking the evidence in the light most favorable for plaintiff, on all the evidence, it was amply sufficient to support the verdict. In the judgment there is

No error.