THOMAS WHITESIDE, BY HIS NEXT FRIEND, H. H. TURNER, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 26 February, 1936.)

**1. Insurance M e—Plaintiff must show incapacity to give notice of disability during period prescribed in policy.**

Where insured contends that his failure to give notice of disability within one year of its inception, as required by the policy, was due to mental incapacity excusing such failure, he must show such mental incapacity during the period specified, and where his evidence is insufficient to show such incapacity during the stipulated period, evidence of mental incapacity after the expiration of the one-year period and that he was thereafter committed to a hospital for the insane is immaterial.

**2. Same—Evidence held insufficient to show mental incapacity sufficient to excuse insured's failure to give notice of disability.**

The policy in suit required insured to give insurer notice of disability within one year from the inception of the disability. Insured contended that his failure to give notice as required by the policy was excused by mental incapacity rendering him incapable of giving such notice. Plaintiff's evidence tended to show that during the one-year period after the inception of the disability as contended by him, he worked at several jobs, wrote letters to his wife, would have days when his mind was good, but was irritable, unreasonable, peculiar, etc., and that his condition grew worse, but that he was not committed to hospital for the insane until three years thereafter. *Held:* Plaintiff's own evidence failed to show mental incapacity during the one-year period sufficient to excuse his failure to give notice of disability, and insurer's motion to nonsuit should have been allowed.

**3. Insurance R c—Evidence held insufficient to show insured was totally disabled while the policy was in force.**

Plaintiff was insured under a group policy providing disability benefits to those becoming totally and permanently disabled while insured under the master policy, each employee's insurance thereunder to terminate upon the termination of his employment. Insured brought action claiming that he was disabled at the time of the termination of his employment, but his evidence tended to show that for over a year after the termination of his employment he was employed at intervals on several jobs of the general nature of his former employment. *Held:* The evidence was insufficient to show permanent and total disability while the insurance was in force, and defendant insurer's motion to nonsuit should have been allowed.

APPEAL by plaintiff and defendant from judgment rendered by *Oglesby, J.,* 11 December, 1935. From BUNCOMBE. Plaintiff's appeal, dismissed. Defendant's appeal, reversed.

This was an action, instituted in the general county court of Buncombe County, 31 October, 1934, to recover on a provision against total and permanent disability contained in a certificate of insurance issued

to plaintiff Thomas Whiteside by the defendant, the Equitable Life Assurance Society, under a group insurance policy for employees of the Donora, Pennsylvania, plant of the American Steel and Wire Company.

The certificate was dated 12 May, 1930. Plaintiff had been employed by said company at Donora, Pennsylvania, since 1923, and had ceased working there 1 October, 1930, and had not since been employed by said company.

The total and permanent disability provision in the certificate of insurance issued to plaintiff was as follows: "In the event that any member, while insured under the aforesaid policy, and before attaining age 60, becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented, for life, from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the society will, in termination of all insurance of such member under the policy, pay equal monthly disability installments, the number and amount of which shall be determined by the table of installments below; the number of installments being that corresponding to the nearest amount of insurance shown in the table, while the amount of each install-stallment shall be adjusted in the proportion that the amount of insurance on such member's life bears to the amount used in the table in fixing the number of installments. The amount of insurance herein referred to shall be that in force upon the date on which said total and permanent disability commenced."

It was in evidence that plaintiff was committed to the South Carolina State Hospital for the Insane on 25 October, 1933, and there remained until 1 May, 1934, when he left without permission, but the records of the hospital were changed to parole after a parole blank had been signed by the plaintiff's mother.

Plaintiff admits that Thomas Whiteside discontinued employment with the American Steel and Wire Company on 1 October, 1930, when the certificate of insurance terminated according to the provisions thereof, and that Thomas Whiteside has never furnished the defendant with notice or proof of disability as provided in said certificate and group insurance. But plaintiff contends that prior to the discontinuance of his employment the plaintiff became totally and permanently disabled and so mentally deficient as to excuse his failure to give the notice required by the terms of the policy and certificate.

Upon the testimony offered the trial court submitted issues to the jury, who answered them in favor of the plaintiff.

From the judgment on the verdict in the county court, defendant appealed to the Superior Court, assigning as error, among other excep-

tions, the overruling of its motion for nonsuit. In the Superior Court the presiding judge overruled defendant's exception for failure to non-suit, but remanded the case to the county court for a new trial for certain errors in the admission of testimony, and from these rulings both sides appealed to the Supreme Court.

*Geo. F. Meadows and J. W. Haynes for plaintiff.*
*Parker, Bernard & DuBose for defendant.*

DEVIN, J. On the defendant's appeal, the only point for considera-tion is whether plaintiff has offered evidence sufficient to go to the jury on the issues as to total and permanent disability and as to mental and physical inability to give the defendant notice thereof, according to the terms of the certificate. This requires an examination of the testimony in the most favorable light for the plaintiff.

Since the plaintiff seeks to excuse his failure to give notice and fur-nish due proof of his disability within one year from 1 October, 1930, we are concerned only with the evidence as to his mental and physical condition during that period, and evidence that he thereafter became insane and incapable in October, 1933, could have no direct bearing on the determinative question.

Plaintiff offered the testimony of Ola Whiteside, his wife and the beneficiary under the certificate, E. B. King, C. F. Williams, and Dr. O. L. Miller; but it appears that witness Miller only knew him since 17 October, 1931, witness King since February, 1932, and witness Wil-liams since October, 1933.

Ola Whiteside testified in substance that she and plaintiff were mar-ried in 1917; that she kept the certificate of insurance; that plaintiff left Donora, Pennsylvania, in October, 1930, and went to Knoxville, Ten-nessee; that she did not go with him, but did join him there a month later, and they lived there together eight months, and then she left him and went to her home in Inman, South Carolina, plaintiff remaining in Knoxville; that while there he worked for the Pittsburg Plate Glass Company for two weeks at $12.00 per week; at the Atkins Hotel two weeks at $10.00 per week; and plaintiff had testified in examination before the clerk that he had worked on a concrete river bridge at Henry Street in Knoxville. Witness Ola Whiteside further testified that plain-tiff left Knoxville soon after she did and came to Asheville to his people; that he later went to Red Bank, New Jersey, and Hudson, New York; that she was not with him, but he wrote to her sometimes and wrote letters to her while he was at Red Bank and Hudson; that in September, 1933, he came to Inman, South Carolina, and 25 October, 1933, was committed to the South Carolina hospital. As to his mental condition,

she testified: "He would have a very good mind today and tomorrow would be altogether different;" that this began in the summer of 1930. "When he quit work he was ill-tempered and unreasonable. His condition got worse until I left him in September, 1931. He would get a job and couldn't keep it very long. He would keep it two or three days and quit. Then we got to where we couldn't get along at all. He would just fuss, growl, and fight all the time. That is why I left him." Asked her opinion as to the condition of his mind, she answered: "Well, I knew something was wrong with him, but I didn't know he was plumb crazy until they carried him to the hospital," 25 October, 1933.

Witness King testified he saw plaintiff in Asheville as often as once a week or twice a month from February, 1932, to August, 1932. "His conduct was fairly good, only his mental condition seemed to be poor, and he is not vigilant, little peculiar." The witness Dr. Miller testified he saw him first 17 October, 1931, in Asheville, "found him in nervous state of excitement," and prescribed for him; that he "considered him insane type of insanity."

Plaintiff bottoms his case on *Rhyne v. Ins. Co.,* 196 N. C., 717 (reaffirmed in same case, 199 N. C., 419), and contends the evidence offered brings it within the rule there promulgated. In that case it was held that a stipulation in a contract of insurance requiring the assured to furnish proof of disability within a specified time ordinarily would not include cases where strict performance was prevented by the total incapacity of the assured to act in the matter, resulting from no fault of his own, and that performance within a reasonable time either by the assured after regaining his senses, or by his representative after discovering the policy, would suffice.

In the *Rhyne case, supra,* the policy was paid up to 15 May, 1927. There was evidence the insured became insane in February, 1927, and was committed to the State Hospital for the Insane 19 August, 1927, and that guardian qualified 29 September, 1927, and notice given and claim made shortly thereafter. In that case the jury found on sufficient evidence that insured was so insane as to be incapable of knowing that he had insurance or that he was required to pay a premium thereon, incapable of knowing that he was totally disabled or that he was required by the terms of the policy to furnish proof thereof.

It is apparent the evidence in the case at bar does not bring it within the rule laid down in the *Rhyne case, supra.* It is insufficient to show either total and permanent disability from bodily injury or disease to the extent that he was prevented from engaging in any occupation or performing any work for compensation of financial value, or mental incapacity, within one year, to give notice and furnish proof of such disability. *Carter v. Ins. Co.,* 208 N. C., 665; *Hill v. Ins. Co.* 207

N. C., 166; *Boozer v. Assurance Society,* 206 N. C., 848; *Thigpen v. Ins. Co.,* 204 N. C., 551; *Watkins v. Ins. Co.,* 201 N. C., 681.

The defendant's motion for judgment of nonsuit should have been sustained.

This disposition of the case renders it unnecessary to consider the matter presented by plaintiff's appeal.

On defendant's appeal, Reversed.

On plaintiff's appeal, Appeal dismissed.