MARY B. GORHAM v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY.

(Filed 14 December, 1938.)

1. **Appeal and Error § 8—An appeal will be determined in accordance with the theory of trial in the lower court.**

In this action on a policy of accident insurance the trial court ruled, with the acquiescence of both parties, that the evidence was sufficient to be submitted to the jury on the question of accidental death within the coverage clause, but judgment as of nonsuit was entered for insufficiency of evidence that notice and proof of loss was given within the time required. *Held:* On insured's appeal, insurer may not contend that the judgment of nonsuit should be sustained for insufficiency of evidence that the loss was within the coverage of the policy, since an appeal *ex necessitate* follows the theory of trial.

**2. Insurance §§ 35a, 40—Provision for immediate notice of death requires exercise of reasonable diligence under the circumstances.**

The requirement of an accident policy for "immediate notice" of death of the insured, as well as the statutory requirement, C. S., 6479 (5), is not inflexible, but imposes the duty to exercise reasonable diligence to give the required notice, which should be measured by the beneficiary's ability and opportunity to act in the premises.

**3. Same—**

The provision of nonliability in an insurance policy upon failure of the beneficiary to give immediate notice of death and proof of loss within ninety days, is not one affecting the coverage of the policy, but is one of forfeiture which is not favored in the law.

**4. Same—Evidence held for jury on question of whether, under the circumstances, beneficiary acted with reasonable diligence to give notice.**

In this action on an accident policy it appeared that notice of the death of insured was not given insurer until about eighteen months after insured's death. The policy provided for nonliability if notice of death were not given within the stipulated time. Plaintiff beneficiary's evidence was to the effect that upon the death of her husband, the insured, she suffered a physical and mental breakdown, was committed to a hospital for the insane a few weeks thereafter, that she was later released but that she did not regain her sanity until after an operation in April of the following year, and that notice of death was given the first part of the following September. Insurer introduced evidence that during the time of the contended insanity plaintiff executed deeds, qualified as co-executrix of her husband's estate, and with her co-executor, executed proofs of death on life policies payable to the estate. *Held:* The conflicting evidence should be submitted to the jury on the question of whether plaintiff exercised reasonable diligence, measured by her ability and opportunity to act in the matter, in giving insurer the stipulated notice of death.

**5. Trials § 24—**

If the evidence is conflicting, or if diverse inferences may reasonably be drawn therefrom, some favorable to plaintiff and others favorable to defendant, the case should be submitted to the jury.

**6. Trial § 22b—**

On motion to nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the issues involved, which may be reasonably deduced from the evidence.

**7. Insurance §§ 35a, 40—**

Denial of liability by insurer on grounds other than the failure to give notice and proof of loss constitutes a waiver of notice and proof of loss.

**8. Same—**

Whether receipt of notice and proof of death by insurer through its agent obviates the necessity of notice and proof of death by the beneficiary, *quære.*

BARNHILL, J., took no part in the consideration or decision of this case.

DEVIN, J., dissenting.

APPEAL by plaintiff from *Parker, J.,* at April-May Term, 1938, of NASH.

Civil action to recover on a policy of accident insurance.

Upon receipt of the payment in advance of the first annual premium of $52.50, the defendant, on 6 April, 1921, issued to Louis Rhodes Gorham a $2,500-policy of accident insurance, payable to his wife, plaintiff herein, as beneficiary in case of death of the insured through accidental means, containing, among others, the following provisions:

"The Pacific Mutual Life Insurance Company of California hereby insures Louis Rhodes Gorham . . . against loss of life resulting directly and independently of all other causes, from bodily injury effected during the term of this policy solely through accidental means. . . .

"4. In the event of accidental death immediate notice thereof must be given the company. . . .

"5. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. . . .

"7. Affirmative proof of loss must be furnished to the company . . . within ninety days after the date of such loss.

"21. This insurance does not cover . . . suicide, sane or insane. . . .

"22. Failure to comply with any of the provisions of this policy shall render invalid any claim under this policy."

It is admitted that all the premiums due on the policy had been paid and that the contract of insurance was in full force and effect on 8 March, 1933, when the insured was found dead in his office as the result of a pistol-shot wound. The bullet had entered the back of his head, a little behind and slightly above his right ear, and was afterwards located just inside and against the skull, near the left eye.

On the trial, the court announced that as plaintiff had shown a violent death, the evidence would appear to be sufficient to warrant the inference of accidental death, rather than suicide, and that in this respect the case would seem to be one for the jury. Counsel on both sides agreed that this was a correct statement of the law applicable to the case.

It is in evidence that on 5 September, 1934, I. T. Valentine, attorney for the plaintiff, addressed a letter to the defendant "making claim on account of accidental death under this policy," and requesting blanks upon which to make formal application for the insurance benefit. The defendant answered on 13 September, 1934, with an equivocal reply; no blanks were furnished; and complete information was asked as to the date and exact cause of insured's death. J. Beach Rhodes, junior vice president and superintendent of the claim department of the defend-

ant company, admitted on cross-examination that he knew the date and what had been stated as the apparent cause of death when this answer was written; that such information came from certified copy of the death certificate of Dr. Gorham, which was received by the defendant as early as 16 June, 1933, and that "we simply made a Yankee answer and asked him for further particulars from his side." He further testified: This death certificate came in from our claim representative in North Carolina. It shows as a cause of death: "Pistol-shot wound of the head entering the parietal region on right side. Apparently self-inflicted. . . . Suicide."

This action was instituted on 25 February, 1935.

In explanation of plaintiff's delay in giving the defendant notice of the death of the insured, there is evidence tending to show that Mrs. Gorham suffered a physical and mental collapse, when informed of the death of her husband and the circumstances surrounding it, and that within a few weeks thereafter it became necessary to commit her to the hospital for the insane at Raleigh, N. C., where she remained in confinement until 19 August, 1933, when, it was found that her being at large would not be injurious to herself or dangerous to the community, she was released on probation. This status continued until 16 May, 1934, when a certificate of discharge was issued by the superintendent of the hospital at the request of some banker in Rocky Mount. According to the testimony of her physician and members of her family she did not recover her sanity or her physical health until after an operation and hospital treatment which she underwent in April, 1935.

Dr. Richard H. Speight testified: "In my opinion at the time I first saw Mrs. Gorham in April, 1933, a month after the death of Dr. Gorham, and until this operation (in April, 1935) her mental and physical condition was not such as to enable her to read a contract or several pages of insurance policy and to comprehend and know what was required of her by the contract of the policy."

Josephine Gorham testified: "From the time of my father's death until the time of mother's operation I would not say she was of a mental condition to transact any business. She was not able to attend to any business. The bank carried on most of her business. I don't think she did any business that amounted to anything of importance. . . . I thought she was insane. . . . Her condition which I have described continued from the time of my father's death until the operation in 1935."

In reply, the defendant offered evidence tending to show that on 21 March, 1933, Mrs. Gorham and the Planters National Bank & Trust Company qualified as co-executors of her husband's estate, and that they have continuously acted as executors ever since. That after Mrs. Gor-

ham's release from the hospital for the insane she carried on numerous business transactions; executed with her co-executor proofs of death on life insurance policies payable to the estate (though the co-executor admits that she neither read nor knew the contents thereof when she signed them); executed divisional deeds with her brothers and sisters in the fall of 1933, etc.

The court being of opinion that the plaintiff's failure to give the defendant "immediate notice" of her husband's death, and that adequate excuse for such failure had not been shown, entered judgment of nonsuit, from which the plaintiff appeals, assigning errors.

*L. L. Davenport and W. H. Yarborough for plaintiff, appellant.*
*Battle & Winslow for defendant, appellee.*

STACY, C. J. It is admitted that the policy in suit was in full force and effect on the date of the death of the insured. Recovery is resisted on two grounds: First, suicide; second, failure to give immediate notice of insured's death and furnish proof of loss within ninety days thereafter.

*First.* It was the opinion of the trial court, concurred in by counsel on both sides at the time, that the evidence of violent death, without more, was sufficient to carry the case to the jury on the issue of accidental death or death through accidental means within the meaning of the policy. *Parker v. Ins. Co.,* 188 N. C., 403, 125 S. E., 6; *Kinsey v. Ins. Co.,* 181 N. C., 478, 106 S. E., 136; *Wharton v. Ins. Co.,* 178 N. C., 135, 100 S. E., 266; *Thaxton v. Ins. Co.,* 143 N. C., 33, 55 S. E., 419; *Harris v. Ins. Co.,* 204 N. C., 385, 168 S. E., 208; *Mehaffey v. Ins. Co.,* 205 N. C., 701, 172 S. E., 331; *Scott v. Ins. Co.,* 208 N. C., 160, 179 S. E., 434.

The defendant now urges a different view, citing *Hill v. Ins. Co.,* 150 N. C., 1, 63 S. E., 124; *N. Y. Life Ins. Co. v. Gamer,* 82 Law Ed., 480; *DeIvecchio v. Bowers,* 80 Law Ed., 163; *Watkins v. Prudential Ins. Co.,* 315 Pa., 497, 95 A. L. R., 869, and particularly *Jefferson Standard L. Ins. Co. v. Clemmer,* 79 F. (2d), 724, 103 A. L. R., 171, and note, in support of its present position; distinguishing, *Hedgecock v. Ins. Co.,* 212 N. C., 638, 194 S. E., 86, and *Spruill v. Ins. Co.,* 120 N. C., 141, 27 S. E., 39, as involving life insurance policies rather than accident contracts of insurance; and suggesting that *Wharton v. Ins. Co., supra,* should be reconsidered as the distinction between life insurance and accident insurance was not then discussed or brought to the attention of the Court in any way. See Cooley's Briefs on Insurance, Vol. 7 (2nd Ed.), 6022; *Moore v. Accident Assurance Corp.,* 173 N. C., 532, 92 S. E., 362; *Rand v. Ins. Co.,* 206 N. C., 760, 174 S. E., 749.

The rule is, that an appeal *ex necessitate* follows the theory of the trial. *Dent v. Mica Co.,* 212 N. C., 241, 193 S. E., 165; *Keith v. Gregg,* 210 N. C., 802, 188 S. E., 849; *In re Parker,* 209 N. C., 693, 184 S. E., 532. Having tried the case upon one theory, the law will not permit the defendant to change its position, or "to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring,* 207 N. C., 6, 175 S. E., 836; *Holland v. Dulin,* 206 N. C., 211, 173 S. E., 310. "The theory upon which a case is tried must prevail in considering the appeal, and in interpreting a record and in determining the validity of exceptions"—*Brogden, J.,* in *Potts v. Ins. Co.,* 206 N. C., 257, 174 S. E., 123.

But for the ruling of the trial court in respect of the sufficiency of the evidence to carry the case to the jury on the issue of accidental death or death through accidental means, and the ready acquiescence therein by counsel, the plaintiff might have pursued a different course. *Midgett v. Nelson,* 212 N. C., 41, 192 S. E., 854; *Morgan v. Benefit Society,* 167 N. C., 262, 83 S. E., 479. In fact, the ruling of the court in this respect is not challenged by the appeal. The nonsuit, therefore, ought not to be upheld on a ground different from that upon which the judgment was rendered, or on defendant's *volte face* between the trial court and the appellate court. *Lumber Co. v. Perry,* 213 N. C., 533.

*Second.* We then come to the ground upon which the demurrer to the evidence was sustained. The question is whether the plaintiff has forfeited her rights under the policy by failing to give the defendant "immediate notice" of the death of the insured and furnish proof of loss within ninety days thereafter. The expression "immediate notice," as used in the policy, we apprehend, was intended to impose upon the plaintiff the exercise of reasonable diligence in giving the stipulated notice, which, under the apparent weight of authority, should be measured by her ability and opportunity to act in the premises. *Woodell v. Ins. Co., ante,* 496; *Ball v. Assurance Corp.,* 206 N. C., 90, 172 S. E., 878; *Mewborn v. Assurance Corp.,* 198 N. C., 156, 150 S. E., 887; *Mutual Life Co. v. Johnson,* 293 U. S., 335. Indeed, the fifth paragraph of the policy apparently embodies this idea in the contract. By its terms the requirement of notice is not inflexible. *Ball v. Assurance Corp., supra.* Nor is the statutory requirement less pliable. C. S., 6479, subsec. 5. Moreover, it should be remembered the provision is one of forfeiture, and not one which affects the nature and desirability of the risk. *Mewborn v. Assurance Corp., supra; Rhyne v. Ins. Co.,* 199 N. C., 419, 154 S. E., 749. See *Clifton v. Ins. Co.,* 168 N. C., 499, 84 S. E., 817. Forfeitures are not favored in the law. *Grabbs v. Ins. Co.,* 125 N. C., 389, 34 S. E., 503; *Ins. Co. v. Norton,* 96 U. S., 234.

There is evidence permitting the inference that plaintiff was not capable of acting in the matter. *Rand v. Ins. Co., supra; Nelson v. Ins. Co.,* 199 N. C., 443, 154 S. E., 752; *Rhyne v. Ins. Co.,* 196 N. C., 717, 147 S. E., 6; *Ball v. Assurance Corp., supra; Mewborn v. Assurance Corp., supra.* There is evidence to the contrary. *Thigpen v. Ins. Co.,* 204 N. C., 551, 168 S. E., 845; *Whiteside v. Assurance Society,* 209 N. C., 536, 183 S. E., 754; *Peeler v. Casualty Co.,* 197 N. C., 286, 148 S. E., 261. This makes it a case for the jury under the theory of the trial. *Brooks v. Ins. Co.,* 211 N. C., 274, 189 S. E., 787; *Diamond v. Service Stores, ibid.,* 632, 191 S. E., 358; *Moore v. Ins. Co.,* 193 N. C., 538, 137 S. E., 580. For otherwise to hold as a matter of law that plaintiff's business activities as shown by defendant's evidence, destroy any excuse she may have for not acting in the present matter, would be not only to pass upon the contradictory evidence in the case, but also to suggest the validity of these transactions. *Wadford v. Gillette,* 193 N. C., 413, 137 S. E., 314. Often an insane person is capable of doing many intelligent acts. The rule is, that upon conflicting evidence, or if diverse inferences may reasonably be drawn therefrom, some favorable to the plaintiff and others favorable to the defendant, the case should be submitted to the jury under proper instructions from the court. *Lithograph Corp. v. Clark, ante,* 400; *Hobbs v. Mann,* 199 N. C., 532, 155 S. E., 163.

The risks assumed by the defendant have not been increased, nor its rights jeopardized, by the failure of the plaintiff forthwith to give the defendant notice of the death of the insured. No such claim is made; actual notice is admitted. Whether the plaintiff was capable of giving the stipulated notice is in dispute. The record precludes a forfeiture by nonsuit, or as a matter of law, without the voice of the twelve.

On motion to nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the issues involved, which may reasonably be deduced from the evidence. *Cole v. R. R.,* 211 N. C., 591, 191 S. E., 353; *Diamond v. Service Stores, supra.*

*Third.* There is another view of the case which may simplify the questions of notice and proof of loss on the further hearing. For this reason we advert to it now.

It is generally held that "failure to give notice or furnish proofs of loss, or defects in the notice and proofs, are waived by a denial of liability on other grounds," the reason being that a denial of liability on other grounds is generally regarded as tantamount to saying payment would not have been made had notice been given, or proofs of loss furnished, and the law is not disposed to require a vain thing. Cooley's Briefs on Ins., Vol. 7 (2d Ed.), 6019; *Guy v. Ins. Co.,* 207 N. C., 278, 176 S. E., 554; *Misskelley v. Ins. Co.,* 205 N. C., 496, 171 S. E., 862; *Proffitt v. Ins. Co.,* 176 N. C., 680, 97 S. E., 635; *Mercantile Co. v. Ins.*

*Co., ibid.,* 545, 97 S. E., 476; *Moore v. Accident Assurance Corp., supra; Higson v. Ins. Co.,* 152 N. C., 206, 67 S. E., 509; *Gerringer v. Ins. Co.,* 133 N. C., 407, 45 S. E., 773; 14 R. C. L., 1349.

"The preliminary proof of loss or death required by a policy is intended for the security of the insurers in paying the amount insured. If they refuse to pay at all, and base their refusal upon some distinct ground without reference to the want or defect of the preliminary proof, the occasion for it ceases and it will be deemed to be waived. And this can work no prejudice to the insurers, for, in an action on the policy, the plaintiff would be obliged to prove the death of the person whose life was insured, whether the preliminary proofs were exhibited or not"— *Mr. Justice Bradley* in *Knickerbocker Life Ins. Co. v. Pendleton,* 112 U. S., 696, 28 L. Ed., 866.

In *Omaha Fire Ins. Co. v. Dierks,* 43 Neb., 569, it was held that the right of an insurance company to notice of loss is a right which it may waive; and when the insurer denies all liability for the loss and refuses to make payment, and places such denial and refusal upon grounds other than the failure of the insured to give notice of the loss, such denial and refusal avoid the necessity of notice. To like effect are the decisions in *Cobb v. Ins. Co.,* 11 Kan., 93; *California Ins. Co. v. Gracey,* 15 Col., 70; *Phillips v. Protection Ins. Co.,* 14 Mo., 221; *Phoenix Ins. Co. v. Rucker,* 92 Ill., 64; *Newman v. Ins. Co.,* 17 Minn., 98.

Still further as illustrative of the principle may be instanced the following:

Illinois case, *Ins. Co. v. Cary,* 83 Ill., 453: "When an insurance company refuses to pay a loss, placing its refusal upon its nonliability in any event, it cannot insist, in defense of an action, that the preliminary proof was insufficient"—5th syllabus.

Minnesota case, *Ins. Co. v. Taylor,* 5 Minn., 393: "Where an insurance company puts its refusal to pay a loss on another ground, it is a waiver of objections to insufficiency in the proofs of loss required by the policy"—4th syllabus.

The manner in which the Supreme Court of the United States disposed of the question in *Tayloe v. Merchants Fire Ins. Co.,* 50 U. S., 390, gives added force to the rule: "Another objection taken to the recovery is, that the usual preliminary proofs were not furnished, according to the requirement of the seventh article of the conditions annexed to the policies of the company. These are required to be furnished within a reasonable time after the happening of the loss. The fire occurred on the 22d of December, 1844, and the preliminary proofs were not furnished till the 24th of November, 1845. This was, doubtless, too late, and the objection would have been fatal to the right of the complainant, if the production of these proofs were essential to the recovery. But the

answer is, that the ground upon which the company originally placed their resistance to the payment of the loss, and which is still mainly relied on as fatal to the proceedings, operated as a waiver of the necessity for the production of the preliminary proofs."

Speaking to the subject in *Parker v. Ins. Co.,* 143 N. C., 339, 55 S. E., 717, *Walker, J.,* delivering the opinion of the Court, said: "The defendant having denied its liability to the plaintiff on the policy by alleging that there was a violation of the iron-safe clause, whereby the policy became null and void, it cannot now successfully plead the failure of the plaintiff to file proofs of loss and defeat his recovery. It cannot blow hot and cold, so to speak, at one and the same time. When it insists that proofs should have been filed, it asserts, of course, the validity of the policy; for why file proofs of loss under a void policy? There can be no loss under such a policy. This defense, therefore, is inconsistent with that of noncompliance with the iron-safe clause, which implies that the policy is invalid. The one necessarily excludes the other, and in the sense that an election must be made between them. This is a most just and reasonable rule, and we have held, in accordance with it, that a denial of liability by a fire insurance company dispenses with the necessity of filing proofs of loss. *Gerringer v. Ins. Co.,* 133 N. C., 407. If the plaintiff had made the required proof, he would have been met with the denial by the defendant of any liability whatever for the loss. It would be unjust to permit the company thus to trifle with a policyholder. We are not speaking of inconsistent pleas, which are allowable, but of defenses which are in substance opposed to each other."

While the matter was not debated in the trial court and there ruled upon, the plaintiff has insisted on the argument here that the denial of liability on the ground of suicide waives the claim of forfeiture and that the case is one for the jury under the unchallenged ruling that the evidence of violent death, without more, is sufficient to warrant an inference of accidental death, rather than suicide. Hence, it appears that the question of waiver will become an important one on the further hearing. See *Misskelley v. Ins. Co., supra; Thaxton v. Ins. Co., supra; Grabbs v. Ins. Co., supra; Jordan v. Ins. Co.,* 151 N. C., 341, 66 S. E., 206; 14 R. C. L., 1350; Notes, 108 A. L. R., 901; and 22 A. L. R., 424-425.

Nothing was said in *Fulton v. Ins. Co.,* 210 N. C., 394, 186 S. E., 486, or *Whiteside v. Assurance Society,* 209 N. C., 536, 183 S. E., 754, or *Dewease v. Ins. Co.,* 208 N. C., 732, 182 S. E., 447, or *Carter v. Ins. Co., ibid.,* 665, 182 S. E., 106, which militates against the principle of waiver. The discussion by *Schenck, J.,* in *Fulton's case, supra,* is fully accordant therewith. Nor is there any turning from the doctrine of waiver in those cases where it is held that the measure of liability is to be determined by the terms, provisions, and limitations of the contract. *Whita-*

*ker v. Ins. Co.,* 213 N. C., 376, 196 S. E., 338; *McCabe v. Casualty Co.,* 209 N. C., 577, 183 S. E., 743.

*Fourth.* It is also in evidence that the defendant had notice of the insured's death as early as 16 June, 1933, a certified copy of the death certificate having been sent to the home office of the defendant by its claim representative in North Carolina.

The case of *Omaha Fire Ins. Co. v. Dierks,* 43 Neb., 473, was an action on a fire insurance policy which provided that in case of loss the insured should forthwith give the insurance company written notice thereof. The insured did not himself give such notice, but the insurer soon after the destruction of the insured property by fire received notice in writing thereof from one of its agents residing in the vicinity where the loss occurred, and through whom the insurance was placed, and refused to pay the loss on the ground that the policy at the date of the fire was not in force. It was held that the insurance contract should not be so technically construed as to compel the insured to furnish information to the insurer which it already had. 33 C. J., 8. *Contra: Continental Ins. Co. v. Parkes,* 142 Ala., 650, 39 S., 204; *California Sav. Bank v. Surety Co.,* 87 Fed., 118.

In *Arkansas Burial Society v. Hough,* 104 S. W. (2d), 809, where, as here, the defense was based, not upon want of notice, but failure to give notice, it was said that "no one needs notice of what he already knows" for "when a person knows a thing he has 'notice' thereof."

We do not place our decision upon this ground, however, as it is unnecessary to do so. The circumstance is mentioned only to show the attenuateness of the claim of forfeiture and to point out how the matter has been dealt with in other jurisdictions.

It all comes to this: The policy had been carried for twelve years and was in force at the death of the insured. Plaintiff demands payment. Defendant pleads noncoverage and forfeiture. Plaintiff replies by saying that, in her helplessness, neither the contract nor the law required of her an impossible or vain thing, and she craves the privilege of being heard before a jury. The law will not deny her this right.

As the case is to be tried again, we refrain from discussing the evidence so as not to prejudice either side on the further hearing.

Reversed.

BARNHILL, J., took no part in the consideration or decision of this case.

DEVIN, J., dissenting: I find myself unable to agree with the result reached in the able opinion written for the Court by the *Chief Justice,* and for the following reasons:

1. A careful examination of all the evidence adduced at the trial leads me to the conclusion that there was no other reasonable hypothesis upon which to account for the death of the insured but that it resulted from a wound self-inflicted. The clear provision of the policy is that: "This insurance does not cover suicide." To my mind it is a manifest case of suicide, which the courts and everybody else should face, notwithstanding technical rules of legal procedure. However, I have no quarrel with the principle of law followed by the Court and sustained by the authorities, that since the insurance is against "death by accidental means," proof of violent death creates the inference of death by accident. This was the view held by the court below.

2. The statute of North Carolina (C. S., 6479), prescribing standard form of policy for accident insurance, authorized the insertion of the following provisions, which appeared in the policy in suit: "Written notice of injury on which claim may be based must be given to the company within twenty days. . . . In the event of accidental death immediate notice thereof must be given to the company." It was also written in the policy: "Failure to comply with any of the provisions of this policy shall render invalid any claim under this policy."

It is uncontroverted that the insured died 8 March, 1933; that on 5 September, 1934, eighteen months later, a letter from an attorney was written the company. In this letter the company was advised of the death of the insured and request made for blanks to make formal application for the insurance benefits. On 25 February, 1935, this suit was instituted. The fact that an agent of the company, in June, 1933, advised the company of the death of insured by suicide, and the receipt by it of a copy of the death certificate showing death by suicide, could not be regarded as notice of claim by the beneficiary under the policy.

The plaintiff's contention that her failure to give notice is attributable to her total incapacity, through no fault of her own, under the rule laid down in *Rhyne v. Ins. Co.*, 196 N. C., 717, 147 S. E., 6, in my opinion is not borne out by the evidence.

The evidence is uncontradicted that she qualified with reasonable promptness as co-executor of her husband's estate, and in March, 1933, she made claim under six life insurance policies (unaffected by suicide), which were paid. She was admitted to the State Hospital 18 May, 1933, under a diagnosis of "drug addictional psychosis," meaning her condition was due to over indulgence of drugs, and not to a mental illness. (Testimony of the superintendent of State Hospital, Dr. Ashby.) On 17 August, 1933, she was paroled and left that institution. At that time "her mental condition was good." Said Dr. Ashby: "In my opinion she was competent to transact ordinary business affairs." Thereafter she transacted business, consulted lawyers, executed deeds, traveled to

New York, and performed many other intelligent acts before attempting to comply with the requirements of the policy to give "immediate notice" of claim, so that the facts might be promptly investigated.

Over against this we have the testimony of plaintiff's daughter, "I thought she was insane." Dr. Speight said: "Her mental and physical condition was not such as to enable her to read a contract of several pages of insurance policy and to comprehend and know what was required of her by the contract of the policy." Who could? This is a far cry from the rule laid down in *Rhyne v. Ins. Co., supra.*

The judge of the Superior Court, Judge Parker, who tried this case with care and reasoned judgment, and heard all the evidence at first hand, made a written statement of his reasons for granting the motion for judgment of nonsuit, and filed it at the time with the court. This statement is printed in the appellee's brief with the consent of the appellant. I quote this statement as follows: "Now in this case the first notification that the defendant had from the beneficiary that she contended that it was an accidental killing, is a letter from Mr. Valentine on 5 September, 1934, that is, lacking a few days being 18 months after the body of Dr. Gorham was found. She says the reason she did not give immediate notice was due to disability and she relies upon the *Rhyne* and *Nelson cases.* The Court says this, that if the beneficiary is prevented by a total incapacity to act in the matter, resulting from no fault of his own, that performance within a reasonable time by the assured after regaining his senses or by his representative after discovering the policy, would suffice. The *Rhyne case,* 196th Report, is the first case that went to our Supreme Court involving that principle of law. In that case Rhyne was insane. He was insane when the suit was brought. In the *Nelson case,* following the *Rhyne case,* Mr. Nelson was suffering from softening of the brain. Of course that was through no fault of their own, insanity and softening of the brain. In this case, the evidence is undisputed that Mrs. Gorham was suffering from no mental diseases. She was addicted to drugs and certainly the taking of drugs is a voluntary act. Dr. Ashby testified she had no trace of insanity. Not a single witness of hers has sworn she was insane. In addition to that, she has presented a number of witnesses who testified that in their opinion Mrs. Gorham was of noncapacity, but the evidence is uncontradicted that Mrs. Gorham, in the fall of 1933, signed several deeds; in 1934, she signed several deeds; she consulted Mr. F. S. Spruill in respect to this particular policy; she consulted Mr. W. S. Wilkinson in respect to accident insurance; she had the body of her husband exhumed and, of course, the purpose of that was this litigation; she carried that body to Duke University, entered into a contract with the doctor she selected to perform a *post mortem,* that he should not divulge

what he found; she has part of the skull taken off; she had the bullet taken out, carried it to New York and to Washington; it is put in the People's Bank in Rocky Mount where I believe they now say part of Dr. Gorham's skull is. Our court has said in the face of facts of that kind the statement of a witness that the person was of noncapacity, is a mere assertion or expression of opinion which has no probative value, which shows that the witness is mistaken, that his opinion is utterly erroneous and does not carry the issue to the jury. In my opinion in this case, the fact that she consulted Mr. Spruill, the fact that she consulted Mr. Wilkinson, and executed those deeds, the fact that she had the body of her husband exhumed, the fact that she attempts to bind the doctor by contract not to divulge what he found, the fact that she carried part of the skull and the bullet to cities in the north, show that the opinion of the witnesses who said she was of noncapacity is a mere assertion or expression of opinion and that she has fatally failed to give immediate notice to this company of loss."

I do not understand the majority opinion to hold as a matter of law that denial of liability by the defendant in its answer on the ground of failure to comply with the terms of the policy with respect to giving the notice of claim, as well as on the ground of suicide, would dispense with the necessity of giving the notice, required by the contract of insurance against accident, and constitute a waiver on the part of the defendant. To do so would render nugatory the provisions contained in the policy with respect thereto, by which the parties have agreed to be bound, and which provisions are inserted in the policy by the sanction of the statute, and would seem to be in conflict with the decisions of this Court in *Dewease v. Ins. Co.,* 208 N. C., 732, 182 S. E., 447; *Whiteside v. Assurance Society,* 209 N. C., 536, 183 S. E., 754; *Fulton v. Ins. Co.,* 210 N. C., 394, 186 S. E., 486.

The distinction between these cases and those cited in the opinion appears in the language quoted in *Misskelley v. Ins. Co.,* 205 N. C., 496 (at page 505), 171 S. E., 862: "The provision in the insurance policy requiring proof of total disability to be furnished within a certain definite time is waived by the company denying liability *within such time* upon other grounds than failure to furnish proof of total disability." *Ins. Co. v. Lewis,* 183 Pac. Rep. (Okla.), 975.

Here the denial was contained in an answer filed (as appears from the record) more than two years after the time for giving "immediate notice" of claim under the terms of the policy had elapsed.